## Appeal of City of Harrisburg from Grant of Tax Exemption for Salem Lodge of B'Nai B'Rith Housing Corporation. City of Harrisburg, Appellant.

Argued January 8, 1975, before President Judge Bow-MAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Francis B. Haas, Jr.*, City Solicitor, for appellant.

*Charles E. Friedman*, with him *Cooper, Friedman & Butler*, for appellee.

OPINION BY JUDGE ROGERS, April 22, 1975:

This case is companion to *City of Harrisburg v. Presbyterian Apartments, Inc.,* 18 Pa. Commonwealth Ct. 428, 337 A.2d 297 (1975) (No. 634 C.D. 1974, filed with the opinion in this case) where we affirmed the order, as here, of the Court of Common Pleas of Dauphin County, sustaining an owner's appeal from a denial of exempt status to a project providing low-cost housing for aged persons of limited income.

As we did in that case, we report the facts as reported in the appellant's, the City of Harrisburg, brief:

"B'Nai B'Rith is a Pennsylvania nonprofit corporation organized for the purpose of providing low cost housing for elderly persons. The purposes clause of its Articles of Incorporation, as amended, states that the purpose of the corporation is to provide on a nonprofit basis for elderly or handicapped families and persons rental housing and related facilities and services under the provisions of Section 236 of the National Housing Act. The B'Nai B'Rith Apartments were built under Section 236 to provide housing for elderly persons with medium incomes. The contract between B'Nai B'Rith and the Harrisburg Redevelopment Authority pursuant to which B'Nai B'Rith purchased the land limits the property to the residential use of families of moderate income in accordance with FHA regulations under Sections 236 and 107-A of the National Housing Act. B'Nai B'Rith's mortgage specifically states that the property is to be used for senior citizen housing with an age limit of 62 and over. The initial funding for the organizational expenses of the project was provided by the Federal and state governments, and has been repaid.

"Two municipal approvals were prerequisite to B'Nai B'Rith's being permitted to construct the apartment building: it had to be named developer of the tract by the Harrisburg Redevelopment Authority, and it had to obtain approval of the Harrisburg City Council for conveyance of the land.

"B'Nai B'Rith's original application to the Department of Housing and Urban Development ("HUD") showed estimated real estate taxes of $31,000. Provision for this $31,000 was reflected in the rent schedule for the apartments.

"B'Nai B'Rith raised the tax payment issue with the Mayor of the City of Harrisburg, and stated that it would pay full taxes, but hoped for a half-value assessment. The budget estimate of $31,000 was based upon the assumption of receiving this half-value assessment.

. . .

"B'Nai B'Rith constructed an apartment building, the B'Nai B'Rith Apartments, at 130 Chestnut Street, Harrisburg, Pennsylvania. The price of the tract was determined by an appraisal specifically designed to reflect its use for Section 236 senior citizen housing. Construction was financed by a $3,840,600 mortgage with interest at the rate of 7% per annum. Pursuant to the provisions of Section 236 of the National Housing Act, the federal government pays all but 1% of the mortgage, which results in B'Nai B'Rith paying that 1% and the federal government subsidizing the remaining 6%.

"Other than the repaid organizational expenses referred to above, funding for the project derived solely from the mortgage. No private funding was involved, and there have been no donations from any private sources.

"The B'nai B'Rith Apartments have 105 efficiency apartments, 101 one-bedroom apartments, and one two-bedroom apartment which is used by the manager. One hundred ninety-six of the tenants left permanent housing in the City of Harrisburg to move into the B'Nai B'Rith Apartments.

"The applicable federal regulations for Section 236 projects establish an upper income limitation of 135% of the maximum income allowable for the tenants of public housing units, and a minimum age of 62. However, those federal regulations also permit 20% of the tenants

to have incomes in excess of the established limit, and 10% of the tenants may be younger than the minimum age of 62. Handicapped persons are eligible for admission at any age, and preference must be given to urban renewal displacees or disaster victims. All tenants must be ambulatory and physically able to maintain themselves in the building.

"The 135% income limitation formula is applied to the Harrisburg Housing Authority maximum income of $4,200 for an individual and $4,600 for a couple, resulting in B'Nai B'Rith income limitations of $5,670 for an individual and $6,210 for a couple. In addition to the 20% who may have incomes in excess of these limits, tenants are permitted an additional income of 5% during the period of their occupancy. A tenant whose income is in excess of the limits is charged rent on the basis of one quarter of his monthly adjusted income, to a maximum of the fair market rental for the apartment.

"A tenant applicant informs B'Nai B'Rith of the source of his income, and B'Nai B'Rith verifies the amount, and also verifies the source for all tenants not paying the fair market rental. Tenants who are willing and able to pay the fair market rental need not have their income verified.

"In examining the economic situation of a tenant applicant, B'Nai B'Rith does not consider the person's assets. No inquiry is made as to a person's checking account or as to items of non-income-producing personal property. A person could theoretically have $100,000 in a checking account and it would not enter into the determination of his economic status with reference to the standards for admission.

"B'Nai B'Rith has itself established 55 as the lower age limit for admission, except that a tenant may be younger if he is the sole support of and living with his parents. The 10% of the tenants who are permitted to be younger than the minimum age limit set by federal regu-

lations need not be disabled or otherwise meet specific qualifications. It is possible that B'Nai B'Rith could have as a tenant an able-bodied person 25 years of age.

"Dr. I. O. Silver, the President of B'Nai B'Rith, does not consider the tenants to be objects of charity. Of the 162 individual tenants, thirty-one, or 19%, have incomes in excess of the upper limit of $5,670. Three of those tenants have incomes in excess of $10,000. Of the forty-three tenant-couples, seventeen, or 40% have incomes in excess of the maximum limit of $6,210. Ten of those couples have incomes in excess of $7,000.

"HUD has established what is known as the fair market rental for similar housing in the area, and requires that the rent at B'Nai B'Rith Apartments be approximately ⅔ of that fair market rental. In fact, the rents at B'Nai B'Rith Apartments are less than 60% of the fair market rental. The 1971 rent schedule showed efficiency apartments renting at $99.35, with a fair market rental of $169.00. A one-bedroom apartment rented for $122.35, with a fair market rental established at $208.13. The rent at B'Nai B'Rith Apartments is less than one would find at commercially rented apartments because the rental covers only operational cost expenses. The rent includes the principal and interest payments on the mortgage, and B'Nai B'Rith will eventually own a building resulting from those rental payments. Approximately 100 tenants pay an additional, optional $3.00 per month television antenna charge, which produces income to B'Nai B'Rith of $300.00 per month. In addition, B'Nai B'Rith realizes income of $250.00 per month from coin-operated laundry and food machines.

"B'Nai B'Rith has ninety-six parking spaces available for lease. Of those ninety-six, fifty-seven are rented commercially at $25.00 per month, and thirty-nine are rented to tenants at $15.00 per month. The fifty-seven commercially rented spaces produce income to B'Nai B'Rith in the amount of $1,425.00 per month. Similar parking spaces in the downtown area of Harrisburg rent for ap-

proximately $25.00 to $30.00 per month, a rate which is about the same as that charged by B'Nai B'Rith. As to these parking spaces, B'Nai B'Rith is in competition with other property owners in the downtown area.

"Rental income covers the operational cost expenses of B'Nai B'Rith Apartments, the salary of a full-time manager, and the principal and interest payments on the mortgage. The initial estimate of annual expenses on a 40-year amortization basis indicated that the project might produce a $10,000 annual surplus.

"HUD has approved a rent increase, including provision for real estate taxes, which will increase rentals to $126.05 for an efficiency apartment, and $155.20 for a one-bedroom apartment. Fair market rentals similarly increased. This rent increase includes an additional $50,000 for real estate taxes (from $31,000 to approximately $81,000). The revised budget submitted to HUD, on which the revised rents are based, showed estimated real estate tax expense of $81,095, based on the actual city and county taxes and an estimate of school taxes, which is therefore the current yearly revenue cost to the taxing authorities of a decision that B'Nai B'Rith Apartments is exempt from local real estate taxation."

We find no material differences in the facts from those of *Four Freedoms House of Philadelphia, Inc. v. Philadelphia*, 443 Pa. 215, 279 A.2d 155 (1971), and we conclude that the lower court correctly held that the project generally qualifies for exemption from local taxation.

However, we find by the record that 57 of the 96 parking spaces provided at the facility are rented to nonresidents at rates comparable to rates in the commercial parking market of the City of Harrisburg. These spaces produce a monthly income of $1,425.00, which bears interesting comparison with an estimate that the project might produce a $10,000 annual surplus. Subsection (b) of Section 202 of The Fourth to Eighth Class County Assessment Law, Act of May 21, 1943, P.L. 571, *as amended*, 72 P.S. §5453.202 (b) (Supp. 1974-1975) provides that

440, (1975).]   Opinion of the Court—Concurring Opinion.

property from which income or revenue is derived, other than from recipients of the bounty of the institution, shall be subject to taxation. *See Community College of Delaware County v. Board of Assessment and Garnet Valley School District,* 5 Pa. Commonwealth Ct. 487, 290 A.2d 432 (1972).

Accordingly, we modify the order of the court below by the direction that the 57 parking spaces be removed from the rolls of exempt properties and assessed for local taxation according to law; and we affirm the order of the lower court as so modified.

---

CONCURRING OPINION BY JUDGE KRAMER:

Although I concur in the result of this case, I must add my reasons because of the dissenting opinion which I have filed concurrently in *City of Harrisburg v. Presbyterian Apartments, Inc.,* 18 Pa. Commonwealth Ct. 428, 327 A.2d 297 (1975).

Solely because of the very broad langauge used by our Supreme Court in *Four Freedoms House of Philadelphia, Inc. v. Philadelphia,* 443 Pa. 215, 279 A.2d 155 (1971) and *Presbyterian Homes Tax Exemption Case,* 428 Pa. 145, 236 A,2d 776 (1968), I can find support for a tax exemption under the stated facts of this case. In this case, as set forth in the majority opinion, there are what appear to be reasonable restrictions on the amount of income of the tenants of this apartment house. While I have reservations concerning the exception to the restrictions on income, whereby 20% of the inhabitants may exceed said restrictions, it seems to me that this percentage is low enough to bring this operation within the holdings of the Supreme Court in *Four Freedoms House, supra,* and *Presbyterian Homes Tax Exemption Case, supra.* Because of this factual difference, vis-a-vis the companion case of *Presbyterian Apartments, supra,* I can concur in the result of this case.

President Judge BOWMAN and Judge MENCER dissent.