Metropolitan Pittsburgh Nonprofit Housing Corporation *v.* Board of Property Assessment, Appeals and Review. Metropolitan Pittsburgh Nonprofit Housing Corporation, Appellant.

Argued October 27, 1976, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*C. William Berger,* with him *Daniel M. Berger,* and *Berger, Kapetan and Malakoff,* for appellant.

*D. R. Pellegrini,* Assistant City Solicitor, with him *Mead J. Mulvihill, Jr.,* City Solicitor, for appellee.

OPINION BY JUDGE BLATT, January 28, 1977:

The Metropolitan Pittsburgh Nonprofit Housing Corporation took an appeal to the Court of Common Pleas of Allegheny County from the denial by the Allegheny County Board of Property Assessment (Board) of the corporation's application for a real estate tax exemption. The appeal was denied in the court below and this appeal followed.

The issue presented here is whether or not federally subsidized housing, erected and operated by a Pennsylvania nonprofit corporation for the benefit of persons and families having low and moderate incomes, is a "purely public charity" within the mean-

ing of Article VIII, Section 2 of the Pennsylvania Constitution, which provides as follows:

> (a) The General Assembly may by law exempt from taxation:
>
> . . . .
>
> (v) *Institutions of purely public charity,* but in the case of any real property tax exemptions only that portion of real property of such institution which is actually and regularly used for the purposes of the institution. (Emphasis added.)

Pa. Const. art. 8, §2.

The appellant is a nonprofit corporation which built and now operates the Lemington Heights housing project in the City of Pittsburgh, the project having been constructed in conformity with the provisions of Section 221(d) of the National Housing Act, 12 U.S.C. §1715l. It has 87 rental units of which 32 are rented by persons whose yearly incomes average only $5,000 and who also receive rent supplements from the Department of Housing and Urban Development (HUD), while the remaining 55 units are rented by persons whose yearly incomes average $7,500. The rents paid by all tenants are below current market rates, ranging from $130 per month for a one-bedroom unit to $200 per month for a four-bedroom unit, the lower rates being possible because the federal government subsidizes the interest rate on the project's financing and because the corporation is nonprofit. HUD controls and regulates the project's rental charges and the admission of tenants. Tenants who fail to pay their rents are evicted in due course.

Section 204 of The General County Assessment Law,[1] 72 P.S. §5020-204, provides, *inter alia,* as follows:

---

[1] Act of May 22, 1933, P.L. 853, *as amended,* 72 P.S. §5020-101 et seq.

(a)  The following property shall be exempt from all county, city, borough, town, township, road, poor and school tax, to wit:

. . . .

(3)  All hospitals, universities, colleges, seminaries, academies, associations and *institutions of* learning, benevolence, or *charity,* including fire and rescue stations, with the grounds thereto annexed and necessary for the occupancy and enjoyment of the same, *founded, endowed, and maintained by public or private charity:* Provided, That the entire revenue derived by the same be applied to the support and to increase the efficiency and facilities thereof, the repair and the necessary increase of grounds and buildings thereof, and for no other purpose. (Emphasis added.)

The test of whether or not an institution is a purely public charity was established in *Young Men's Christian Association of Germantown v. Philadelphia,* 323 Pa. 401, 409, 187 A. 204, 208 (1936), as follows:

In all our decisions on this subject there can be discerned as a prerequisite to the taxation exemption of an institution claiming to be benevolent or charitable that it, or the portion of its property, in respect to which exemption is claimed, must possess *an eleemosynary characteristic* not possessed by institutions or property devoted to private gain or profit. What is 'given' must be more nearly gratuitous than for a price which impresses one as being proportionate to the services rendered. There must be facts which justify a finding that the 'actual use and occupation' of the premises is primarily for the designated charitable object and not largely for commercial purposes. (Emphasis added.)

*Accord, Pittsburgh Institute of Aeronautics Tax Exemption Case,* 435 Pa. 618, 258 A.2d 850 (1969); *Salvation Army v. Allegheny County,* 367 Pa. 373, 80 A.2d 758 (1951).

*For an institution to obtain a tax exemption, it must affirmatively show that it is an institution of purely public charity and that it was founded and maintained by public or private charity. Four Freedoms House of Philadelphia, Inc. v. Philadelphia,* 443 Pa. 215, 279 A.2d 155 (1971); *Woods Schools Tax Exemption Case,* 406 Pa. 579, 178 A.2d 600 (1962). And, as we have held in *Robert Morris College v. Board of Property Assessment,* 5 Pa. Commonwealth Ct. 648, 656-57, 291 A.2d 567, 572 (1972):

[S]tatutory provisions exempting property such as charitable institutions from taxation are subject to a strict construction rather than a liberal one. Since liability of all real estate to taxation is the rule, with exemption the exception, the burden is placed upon the taxpayer to bring himself within the exemption statute.

. . . .

The question whether the real property owner is an institution of 'purely public charity' within the meaning of the Constitution and the statutes is a mixed question of fact and law. (Citations omitted.)

The underlying philosophy of the constitutionally-authorized and legislatively-enacted tax exemption was stated by our Supreme Court as follows:

Taxes are not penalties but are contributions which all inhabitants are expected to make (and may be compelled to make) for the support of the manifold activities of government. Every inhabitant and every parcel of

property receives governmental protection. Such protection costs money. When any inhabitant fails to contribute his share of the costs of this protection, some other inhabitant must contribute more than his fair share of that cost. . . . *Any institution which by its charitable activities relieves the government of part of this burden is conferring a pecuniary benefit upon the body politic, and in receiving exemption from taxation it is merely being given a 'quid pro quo' for its services in providing something which otherwise the government would have to provide.* . . . The measure of an institution's gratuitous aid to those requiring it is the measure by which the government is relieved of its responsibilities. It is therefore just that an institution which assumes pro tanto the taxpayer's burden should be relieved of its own tax burden. (Emphasis added.)

*Young Men's Christian Association,* supra, 323 Pa. at 413-414, 187 A. at 210.

The appellant has cited *Presbyterian Homes Tax Exemption Case,* 428 Pa. 145, 236 A.2d 776 (1968), and *Four Freedoms House, supra,* and the cases following those decisions,[2] for the proposition that providing housing for low and moderate income persons constitutes an exempt charitable purpose. These cases must be distinguished, however, because each such case dealt with housing provided for the aged, and our Supreme Court specifically ruled in *Presbyterian Homes, supra,* that the care of the aged has always been recognized as charitable.[3] We believe, therefore,

---

[2] *Appeal of City of Harrisburg,* 18 Pa. Commonwealth Ct. 440, 337 A.2d 303 (1975) ; *City of Harrisburg v. Presbyterian Apartments, Inc.,* 18 Pa. Commonwealth Ct. 428, 337 A.2d 297 (1975).

[3] In *Presbyterian Homes, supra,* the home for the aged had been established by the Huntingdon Presbytery from gifts and con-

that our determination as to whether or not this housing project is entitled to a tax exemption must take account of the difference between housing provided for the aged, a declared charitable activity, and housing provided for low and moderate income individuals, concerning which no policy has as yet been determined in Pennsylvania.

A housing project is not a purely public charity, of course, unless its beneficiaries are the proper objects of charity, *See Presbyterian Homes, supra.* Nor can it be such unless the property in question is put to a charitable use. *Board of Revision of Taxes v. United*

tributions and a fund-raising campaign, which raised over $340,000. Admission to the home was not restricted to any particular class and included those who were unable to pay the usual charges of the home. The Supreme Court recognized that "[f]or centuries, and in nearly every civilized Country, the care of the aged has been considered charitable," *Presbyterian Homes, supra,* 428 Pa. at 151, 236 A.2d at 779, and held that the home was operated as a purely public charity. In *Four Freedoms House, supra,* a nonprofit corporation had constructed a low cost housing project for the aged with a 100% federally financed mortgage. Prospective tenants were required to meet specified age and income criteria. The court there held that, following *Presbyterian Homes, supra,* the housing project there involved constituted a public charity. Although the court further held that the project was founded and maintained by public and private charity, we are unable now to discern from the facts in that case the manner in which the home was founded and maintained by either public or private charity. Our Supreme Court stated, however, that "there can be no doubt that providing low-cost housing for elderly persons with limited incomes constitutes a public charity." *Four Freedoms House, supra,* 443 Pa. at 219, 279 A.2d at 157. While our Court specifically followed *Four Freedoms House, supra,* in both *City of Harrisburg v. Presbyterian Apartments, Inc.,* 18 Pa. Commonwealth Ct. at 434, 337 A.2d at 300 ("Four Freedoms House [supra] is directly in point with the case before us and is . . . controlling") and *Appeal of City of Harrisburg,* 18 Pa. Commonwealth Ct. at 446, 337 A.2d at 306 ("We find no material differences in the facts from those of Four Freedoms House"), we do not believe that it is controlling here.

*Fund of the Philadelphia Area,* 11 Pa. Commonwealth Ct. 201, 314 A.2d 530 (1973). In the case at hand, we do not believe that low and moderate income families are necessarily or automatically the objects of charity, nor do we believe that the property here can be said to be put to a charitable use merely because its tenants pay below market level rents as a result of beneficent federal legislation and governmental funding on the construction costs of the project. The facts here are that the initial seed money for the project was borrowed from private sources[4] and repaid (although without interest) and that the rentals charged are designed to cover fully the costs of the project's operation and maintenance.

It is clear that almost any activity, such as this one, which is not undertaken for profit and which clearly benefits society, as this one does, may readily be classified as "charitable." All such laudable activities do not, however, constitute "purely public charities" within the meaning of our constitutional tax exemption. *Bower Hill Civic League Appeal,* 207 Pa. Superior Ct. 122, 215 A.2d 305 (1965). The creation of a non-profit corporation such as this, to take advantage of available federal legislation so as to provide low-cost housing for individuals without substantial income, is undoubtedly a commendable enterprise, and it certainly involved the generous contribution of much time and effort on the part of many public-spirited people. We do not believe, however, that our constitutional and statutory tax exemption provisions are so broad as to include a project of the kind here concerned.

[4] Community Affairs Committee of the United Jewish Federation, Appalachian Regional Commission, and Dr. David Horwitz, president of the corporation.

We have been unable to find any decisional law in Pennsylvania exactly on point. The Supreme Court of New Mexico, however, has had occasion to consider this question in *Mountain View Homes, Inc. v. State Tax Commission*, 77 N.M. 649, 655, 427 P. 2d 13, 17 (1967),[5] and it held as follows:

> True, no one makes a pecuniary profit, and certain persons and families who may be decribed as 'low-income,' 'workers,' 'aged,' or 'underprivileged' are provided better housing at lower prices than would otherwise be available to them. A benefit is thus bestowed. However, the recipients are certainly in no sense sick or indigent, and we would venture that most would be surprised to learn that they are considered as being proper objects for, or as recipients of charity. There is nothing in the record which indicates that any are welfare clients, or are permitted to occupy apartments without payment of the established rental. Neither is there any element of fraternity, brotherhood or good fellowship intended to improve the spirits or impel to renewed effort. It is clear that rents are fixed at an amount necessary to pay the

---

[5] This case involved a 221(d) housing project constructed and operated by a nonprofit corporation which had "built a multi-family housing complex in Albuquerque containing 316 units ranging in size from efficiency apartments to three bedrooms with two baths renting for $105.00 per month." 77 N. M. at 650, 427 P.2d at 14. The applicable provision of the Constitution of New Mexico provided:

> 'The property of the United States, the state and all counties, towns, cities and school districts, and other municipal corporations, public libraries, community ditches and all laterals thereof, all church property, all property used for educational or charitable purposes * * * shall be exempt from taxation.'

77 N. M. at 651, 427 P.2d at 14.

> interest, amortize the principal and pay all expenses of maintaining the property. By what theory this should not include taxes on the same basis as other comparable properties is not clear to us. That the federal government does not tax the income derived from the property is in no way persuasive. *Here, we have an enterprise to furnish low-cost housing to a certain segment of our population. It was intended to be self-supporting, without any thought that gifts or charity were involved. The tenants are required to pay for the premises occupied by them with the rentals being fixed so as to return the amount estimated as being necessary to pay out the project.* It is competitive with landlords offering other residential property for rent and on which taxes must be paid. Also, as the State Tax Commission found there was no evidence that the public is relieved of any expense in comparison with the loss of tax revenue. (Emphasis added.)

Clearly the situation in New Mexico was similar to the one here, and the government itself in each instance is shouldering the burden of providing low and moderate income housing, as opposed to having that burden shouldered by a charity.[6] We believe that the reasoning in that New Mexico case, while not governing in Pennsylvania, is nonetheless persuasive, and we must conclude, therefore, that the appellant housing project here was not entitled to a tax exemption.

Clearly, of course, the tenants of this project are not wealthy persons, and we accept as true the appellant's assertion that the project enables its tenants to

---

[6] The appellant became delinquent in making its mortgage payments and, as a result, the private mortgagor has been satisfied and the mortgage has been assigned to HUD.

enjoy a quality of housing which they could not otherwise afford. While we do not underestimate the value of adequate housing, however, we do not consider these persons to be the objects of charity as they would be if they were poor or destitute. While the project does possess some charitable characteristics, we do not believe that it fully meets the strict requirements for a tax exemption. We therefore, affirm the order of the lower court.

ORDER

AND Now, this 28th day of January, 1977, the order of the Court of Common Pleas of Allegheny County, dated December 18, 1975, is affirmed.

Judge WILKINSON dissents.