537 A.2d 948

Advanced Living, Inc., Appellant *v.* Montgomery County Board of Assessment Appeals, Appellee.

Argued December 14, 1987, before Judges Mac-
Phail, Doyle, and Senior Judge Barbieri, sitting as a
panel of three.

*Gerald F. Glackin,* for appellant.

*Andrew B. Cantor,* with him, *Bernard A. Moore,
Bert M. Goodman, R. Stephen Barrett,* and *Frank W.
Jenkins,* for appellee.

Opinion by Judge MacPhail, February 18, 1988:

In this appeal, Advanced Living, Inc. (Appellant)
challenges the denial by the Court of Common Pleas of

Montgomery County of Appellant's request for tax-exempt status as a charitable institution. At issue is approximately thirteen acres of land on which Appellant has constructed 107 independent living units for persons with limited income who are at least 62 years of age and/or handicapped. For the reasons which follow, we affirm the denial of tax-exempt status regarding the subject property.

The facts of this matter are undisputed and were presented to the common pleas court on a case stated basis.[1] The facts reveal that Appellant, a non-profit corporation, was formed in 1962 as the housing development arm of the General Conference of the Schwenckfelder Church. The corporation was intended to serve as the borrower of federal funds to develop housing for the elderly or handicapped under Section 202 of the Housing Act of 1959, 12 U.S.C. §1701q.

In 1978, Appellant entered into a regulatory agreement with the Secretary of Housing and Urban Development (HUD) which provided $3,290,400 in financing for the construction of the subject facility and for rent subsidization for the tenants of the premises after construction in accord with Section 8 of the United States Housing Act of 1937, 42 U.S.C. §1437f. Pursuant to the agreement, Appellant is barred from charging any admission fee, founder's fee, or life care fee to prospective tenants. Though there is no minimum income required for admission to the facility, there is a maximum income eligibility requirement which limits income for single persons to $15,600 and couples to $17,850. Rental

---

[1] We observe that the parties, by stipulation, have expressly reserved the right to appeal the order of the common pleas court. Absent such a reservation, the judgment of the court regarding the case stated would have been final and unappealable. *Clearfield Bank & Trust Co. v. American Manufacturers Mutual Insurance Co.*, 344 Pa. Superior Ct. 588, 497 A.2d 247 (1985).

schedules are approved by HUD, as are eligibility criteria for admission. Appellant's annual budget is subject to HUD approval. Real estate taxes are included as a line item in determining budgetary operating expenses. Rent is subsidized by HUD to a total monthly amount of $415.00 per unit. As of April, 1984, actual payment by tenants ranged from a low $23.00 per month to a high of $346.00 per month. Appellant has never paid any portion of the rentals established by HUD.

The fact stipulation further reveals that the General Conference of the Schwenckfelder Church assisted in raising a total of $45,000 which was applied, in 1962, toward the purchase of approximately 21 acres of real estate and to enable Appellant to initiate its program. A portion of this real estate was later used for the construction of the housing units here at issue.[2] Member churches and individual church members provide additional contributions and render personal services to the residents of the facility. The amount of such contributions does not appear of record. The directors and officers of Appellant serve without compensation with the exception of a consultant's fee of $250.00 per month which is paid for services rendered by one of the directors. Appellant is exempt from federal income tax and donors may deduct contributions made to Appellant under Section 170 of the Internal Revenue Code.

The sole issue in this case is whether, based on the facts as stipulated, Appellant is entitled to tax-exempt status under Section 204(a)(3) of The General County Assessment Law (Law),[3] which provides, in pertinent part, as follows:

---

[2] A portion of the land purchased in 1962 was used for the construction of another elderly housing facility not at issue in this case.

[3] Act of May 22, 1933, P.L. 853, *as amended*, 72 P.S. §5020-204(a)(3).

The following property shall be exempt from all county, city, borough, town, township, road, poor and school tax, to wit:

. . . .

(3) All . . . institutions of learning, benevolence, or charity . . . *founded, endowed, and maintained by public or private charity* . . . .

(Emphasis added.) The legislative grant of tax-exempt status to charitable organizations is, of course, constitutionally limited to those organizations which qualify as "purely public charities." Pa. Const. art. VIII, §2(a)(v); *see Hospital Utilization Project v. Commonwealth*, 507 Pa. 1, 487 A.2d 1306 (1985). In order to establish entitlement to a tax exemption under Section 204(a)(3) of the Law, the taxpayer has the affirmative burden of proving that the institution "(1) is one of 'purely public charity'; (2) was founded by public or private charity; (3) is maintained by public or private charity." *Woods Schools Tax Exemption Case*, 406 Pa. 579, 584, 178 A.2d 600, 602 (1962).

Although the individual factual matrix of cases in this area of the law is generally quite variable, rendering past precedent of limited value, the facts of the instant case are remarkably similar to those recently analyzed by our Supreme Court in *G.D.L. Plaza Corp. v. Council Rock School District*, 515 Pa. 54, 526 A.2d 1173 (1987). *G.D.L. Plaza* also involved a HUD-financed and subsidized housing project for eligible elderly and handicapped persons. The project, which was constructed on land owned by G.D.L. Plaza, was financed by way of a Section 202 mortgage and rents were subsidized pursuant to Section 8 of the United States Housing Act of 1937.

In concluding that G.D.L. Plaza did not qualify for tax-exempt status, the Court centered its analysis on whether or not the facility was *maintained* by charity as

required by Section 204(a)(3) of the Law. The Court noted that, by federal governmental design, the entire funding for the project, aside from tenant rental payments, was derived from the government:

> The federal government as a matter of policy has provided that the Department [HUD] shall coordinate the implementation of the Section 202 mortgage loan program and the Section 8 housing assistance payments program. 12 U.S.C. §1701q(g). Non-profit organizations are thus encouraged to undertake the work of increasing the housing supply for elderly and handicapped people *without assuming any financial risk*.

*G.D.L. Plaza,* 515 Pa. at 63, 526 A.2d at 1177 (emphasis in original). This financial circumstance, which is equally applicable in the matter at bar, clearly distinguishes G.D.L. Plaza and Appellant from similar facilities which have been granted tax exemptions such as those involved in the cases of *Four Freedoms House of Philadelphia, Inc. v. Philadelphia,* 443 Pa. 215, 279 A.2d 155 (1971) and *Presbyterian Homes Tax Exemption Case,* 428 Pa. 145, 236 A.2d 776 (1968). In *Four Freedoms House,* the facility was financed with a Section 202 mortgage, but the revenues used to repay that mortgage were derived solely from tenant rents, the majority of which were *not* federally subsidized. Moreover, the rental charges were found to be lower than fair market rates. In *Presbyterian Homes,* the facility was constructed with $340,000 raised in a fund-raising campaign conducted by the Huntingdon Presbytery and was maintained on a non-profit basis without federal government subsidization.

The Court in *G.D.L. Plaza* also noted the significance of current federal law which provides that HUD may make adjustments in the maximum monthly rental rate to reflect increases in the expenses necessary to

maintain the housing units which have resulted from substantial increases in real estate taxes. *See* 42 U.S.C. §1437f(c)(2)(B). The Court thus concluded that the costs of real estate taxes generally are included in HUD's determination of monthly rental rates. This conclusion is consistent with the fact stipulation noted earlier, which indicates that real estate taxes are included as a line item in budget submissions by the facility. Thus, it appears that the tenants of the facility would not be adversely affected by the payment of real estate taxes by Appellant. As the Supreme Court observed in *G.D.L. Plaza*, 515 Pa. at 63 n.4, 526 A.2d at 1177 n.4, "the federal program is structured so as to pass federal tax dollars on to the local government through real estate taxes paid by the subsidized project . . . . [T]his method would appear to offer the advantage of keeping blocks of property devoted to low income housing on the tax rolls, making such uses more attractive and acceptable to local municipalities."

Having found no significant differences between the matter now before us and *G.D.L. Plaza*, we must conclude that Appellant has failed to sustain its burden of proving that the facility in question is maintained by purely public charity.[4] We, accordingly, will affirm the order of the court of common pleas.

### ORDER

The order of the Court of Common Pleas of Montgomery County in the above-captioned matter is hereby affirmed.

---

[4] As in *G.D.L. Plaza*, we recognize that our ruling is tied closely to the present scheme of federal funding regarding facilities such as Schwenckfeld Manor. The decision reached here is, therefore, limited to the facts and funding mechanism currently in effect.