Pittsburgh Institute of Aeronautics Tax Exemption Case.

620

Argued October 10, 1969. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Leonard M. Mendelson,* with him *Edward C. Leckey* and *William S. Hays,* for appellant.

*Sheldon L. Keyser,* Assistant County Solicitor, with him *Maurice Louik,* County Solicitor, for county, appellee.

OPINION BY MR. JUSTICE JONES, November 11, 1969:

The issue on this appeal is whether Pittsburgh Institute of Aeronautics (PIA), which operates a school for the training of aeronautic mechanics and technicians, is exempt from local taxation. The Court of Common Pleas of Allegheny County held that it was not tax exempt and the propriety of that ruling is before us.

PIA, a nonprofit corporation, is located at the Allegheny County Airport upon land which it leases from the County of Allegheny and upon which are PIA-owned buildings and improvements which are sought to be taxed. It was incorporated in 1945, with the initial capital being provided by the sale of five hundred shares of stock at $10.00 per share: upon dissolution of the corporation, the articles of incorporation provide that these shareholders will be repaid, without interest. With the exception of a large amount of equipment given the school by the Federal Government, the only other capitalization of the corporation was provided in 1960, when William J. Graham, one of the incorporators, donated a life insurance policy having a cash surrender value of $13,000.00. The training equipment used by the school has been donated by the Federal Government, and, according to PIA, had a value of about $4,000,000.00 when received by the school.

Twenty-eight full-time teachers are employed by the school in training the 816 students, 605 of whom are full time. This number has increased steadily from 1961, when PIA had 341 students. The tuition, books

and supplies for the twenty-one month course cost the students about $2,830.00. Some of these students are able to obtain partial scholarships from the Commonwealth of Pennsylvania and from 1967 through 1969, these scholarships accounted for approximately 4% of the tuition that was paid to PIA. The school itself provides partial scholarships to a negligible number of students—a total of ten from 1966 through 1969.

PIA claims to be exempt from local real estate taxation on the basis that it is a purely public charity within the scope of the Act of May 22, 1933, P. L. 853, §204, 72 P.S. §5020-204, which provides as follows: "The following property shall be exempt from all county, city, borough, town, township, road, poor and school tax, to wit: . . . (c) All hospitals, universities, colleges, seminaries, academies, associations and institutions of learning, benevolence, or charity . . . founded, endowed, and maintained by public or private charity: Provided, That the entire revenue derived by the same be applied to the support and to increase the efficiency and facilities thereof, the repair and the necessary increase of grounds and buildings thereof, and for no other purpose . . . ." This statute was passed pursuant to Article 8, §2 (a) of the Constitution of Pennsylvania, which states: "The General Assembly may by law exempt from taxation . . . . (v) Institutions of purely public charity . . . ."

In the interpretation of the statute, certain principles of law have been well settled. First, the burden of bringing himself within the statute lies with the one claiming exemption: *Wynnefield United Presbyterian Church v. City of Philadelphia,* 348 Pa. 252, 35 A. 2d 276 (1944). Second, statutes which exempt real estate from taxation must be strictly construed against the claimed exemption: *McGuire v. Pittsburgh School District,* 359 Pa. 602, 60 A. 2d 44 (1948). Third, there

is no exception to this rule of strict construction in the case of property owned by a purely nonprofit educational institution: *University of Pittsburgh Tax Exemption Case,* 407 Pa. 416, 180 A. 2d 760 (1962).

When examining the facts of each individual case, it is also important that we bear in mind the theory underlying the exemption statute, and why it is that only certain institutions are relieved of their normal tax load. The legislature has recognized by this statute that some organizations actually serve a public, rather than a private, purpose, and should be relieved of their tax burden accordingly: *Ogontz School Tax Exemption Case,* 361 Pa. 284, 315, 65 A. 2d 150, 164 (1949).

We first expressed this view in *YMCA of Germantown v. Philadelphia,* 323 Pa. 401, 409, 187 A. 204, 208 (1936), as follows: "In all our decisions on this subject there can be discerned as a prerequisite to the taxation exemption of an institution claiming to be benevolent or charitable that it . . . must possess an eleemosynary characteristic not possessed by institutions or property devoted to private gain or profit. What is 'given' must be more nearly gratuitous than for a price which impresses one as being proportionate to the services rendered."

We have previously outlined the standards to be applied when a school claims to be exempt within the ambit of this statute. "For the appellant to obtain the claimed exemption from taxation, it must affirmatively show that the entire institution: (1) is one of 'purely public charity'; (2) was founded by public or private charity; (3) is maintained by public or private charity." *Woods Schools Tax Exemption Case,* 406 Pa. 579, 584, 178 A. 2d 600, 602 (1962). The mere fact that a school is a nonprofit corporation does not mandate that it should be tax exempt under our statute. *Id.*

at 587, 178 A. 2d at 604; *Ogontz School Tax Exemption Case,* 361 Pa. 284, 297, 65 A. 2d 150, 155 (1949).

We agree with the finding of the court below that PIA has not sustained its burden of proving the right to be exempt from local taxes. In order to be classified as a charity, the school must demonstrate that it serves a public purpose. The function of the school and the type of training it offers are not determinative of this question, as long as the school generally benefits the public. See: *Hill School Tax Exemption Case,* 370 Pa. 21, 23, 87 A. 2d 259, 261 (1952). One factor which may properly be considered in determining tax exemption is the amount of scholarship aid which is provided by the school. A school in which the admission of students is almost totally limited to those who are able to pay their own way can hardly be considered a charitable institution: *Woods Schools Tax Exemption Case,* 406 Pa. 579, 584-85, 178 A. 2d 600, 603 (1962). For the four-year period from 1966 through 1969, approximately one third of 1% of the school's student body was awarded partial scholarships by the school and this scholarship aid represented less than one fifth of 1% of the total tuition received by PIA during the four-year period. This Court stated in *Ogontz School Tax Exemption Case,* 361 Pa. 284, 292, 65 A. 2d 150, 153 (1949): "An institution whose free patrons number only about 10% of all its patrons cannot be classed as an institution of purely public charity."

A second factor, which should be weighed with the amount of PIA scholarships, is the extent to which the tuition charged actually covers the operating expenses of the school. For example, if the tuition only pays for one half the operating expenses, then every student is effectively getting a 50% scholarship irrespective of the number of formal scholarships offered. The tuition, books and supplies for the twenty-one month

course offered by PIA cost the students about $2,-830.00. This figure certainly falls far short of fulfilling the requirement "that a school to qualify as a 'purely public charity' must donate or render gratuitously a substantial portion of its educational services." *Woods Schools Tax Exemption Case,* 406 Pa. 579, 587, 178 A. 2d 600, 604 (1962). Certainly the 813 students who, in 1968, had to pay almost $3,000.00 each to learn how to be airplane mechanics would not consider themselves objects of charity!

Another factor to be noted is that PIA's net income (total tuition, less operating expenses) has rapidly increased from $47,165.11 in 1965 to $171,281.27 in 1968. It is the contention of PIA, however, that, in this connection, we should include in our consideration well over $500,000.00 as a depreciation expense on the equipment which has been donated to the school by the Federal Government. We reject that contention for the purpose of deciding whether PIA is a charitable institution entitled to exemption from local taxes. We first note that the person who has been PIA's accountant since its inception in 1945 did himself testify that, if the school were paying a Federal corporate tax, PIA could not depreciate this donated equipment. Whether or not he was correct, it is important for our purposes merely to note that the equipment did not cost PIA anything and, moreover, there is no indication whatsoever that the Federal Government might stop donating this type of equipment to the school, as it has been doing for over twenty years. Since the school does not have to pay to replace any of its equipment, it would be totally unrealistic to consider any amount of depreciation as an expense—"operating expense"—or otherwise. If PIA were to increase its income to balance this depreciation factor to any extent, the result would be an unreasonable accumulation of income.

*See generally, James Estate,* 414 Pa. 80, 199 A. 2d 275 (1964). For accounting purposes, the extra income might be balanced by the depreciation figures. In actuality, however, since the Federal Government supplies the school with its equipment free of charge, this extra cash income could only be accumulated. We are, therefore, not persuaded that, for the purposes of this appeal, we should consider the depreciation of this donated equipment as an expense of the school.

The fact that PIA has been making a substantial profit for the past few years raises a fourth problem. In order to be classified as a purely public charity, "the institution must be entirely free from private profit motive." See: *Hill School Tax Exemption Case,* 370 Pa. 21, 26, 87 A. 2d 259, 262 (1952). If the operation of the school involves some element of *private gain,* other than reasonable payment for services actually rendered, then the school is not a *purely* public charity. In a recent case which involved the application of this same statute to the Vanguard School, we noted, as an important factor in allowing the exemption, that any profits realized were used directly for the costs of the school rather than going to any individuals. See: *Vanguard School Tax Exemption Case,* 430 Pa. 378, 383, 243 A. 2d 323, 325 (1968). In the case of PIA, three of the administrators of the school, who are also salaried, last year received "bonuses" totaling $46,000.00. Payment of such "bonuses" would indicate that PIA is not "entirely free from private profit motive."

It is abundantly clear that, although PIA may be a very fine school with a laudable purpose, it is simply not a "purely public charity," within the meaning and intendment of the Pennsylvania tax exemption statute.

PIA has raised three other points which may be disposed of briefly. First, it has been pointed out that

the school has continuously enjoyed exemption from local taxation since 1946. However, this point is not conclusive since, in effect, every triennial period raises a separate inquiry as to PIA's tax exemption status.

A second point raised is that PIA currently enjoys an exemption from paying Federal income tax, an exemption which it has had since 1946. This fact is immaterial and not controlling since we are not bound by Federal determinations as to the charitable character of a school. More important, however, standards applied under the Federal statute are totally different from those under the Pennsylvania statute—the Federal statute applies to any educational institution, charitable or otherwise. See: Int. Rev. Code of 1954, §501 (c)(3).

A third point made by PIA is that it should be exempt from local taxation since the property in question is public property used for public purposes. The Act of May 22, 1933, P. L. 853, art. II, §204, as amended by the Act of May 3, 1943, P. L. 158, §1, 72 P.S. §5020.204(g), exempts from local taxation "[a]ll other public property used for public purposes . . . ." PIA seems to have confused the test to be applied in deciding whether an institution is a "purely public charity" with the test for whether property is being put to a "public use." See: *Moon Township Appeal,* 387 Pa. 144, 150-51, 127 A. 2d 361, 364-65 (1956). In accordance with our decision that PIA is not a "purely public charity," the school also clearly fails to qualify for an exemption under 72 P.S. §5020.204(g). PIA is merely a school that happens to be located on property leased from the County of Allegheny. See: *H. K. Porter Company Appeal,* 421 Pa. 438, 219 A. 2d 653 (1966); *Moon Township Appeal,* 387 Pa. 144, 127 A. 2d 361 (1956); *New Castle v. Lawrence County,* 353 Pa. 175, 44 A. 2d 589 (1945).

We have carefully reviewed the record in this case and the findings of fact of the court below, and are satisfied that PIA has failed to establish its right to be exempt from local taxation.

Order affirmed. Appellant to pay costs.

Mr. Justice ROBERTS and Mr. Justice POMEROY concur in the result.