**In Re: Appeal of AMERICAN INSTITUTE FOR CHARTERED PROPERTY AND CASUALTY UNDERWRITERS from the Decision of the Board of Assessment Appeals of Chester County in Connection with the Premises at 720 Providence Road Marvern, PA 19355 Relating to its Exemption from all Real Estate Taxes Parcel No. 54–06–0048.0100**

**Appeal of: American Institute for Chartered Property and Casualty Underwriters.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 11, 2007.

Decided July 6, 2007.

---

James E. Prendergast, Wayne, for appellant.

Jeffrey R. Sommer, West Chester, for appellee, Chester County Board of Assessment Appeals.

James C. Sargent, Jr., West Chester, for appellee, Great Valley School District.

BEFORE: LEADBETTER, President Judge, and LEAVITT, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

American Institute for Chartered Property and Casualty Underwriters (Institute) appeals from an order of the Court of Common Pleas of Chester County (trial court) which denied the Institute's request for a property tax exemption for its real property located in Chester County. We affirm.

The Institute is the owner of 23.5 acres of real property that is improved with two

buildings and is located at 720 Providence Road in Willistown Township, Chester County (Property). The Institute was founded in 1942 and offers certification and classes in property casualty insurance. It currently has 125,000 students enrolled world-wide, however, no student actually attends class on the Property. The Institute writes, edits and publishes insurance textbooks and study guides. It also creates and administers exams on its subjects. The Institute offers a chartered property casualty underwriter (CPCU) designation and provides eleven courses in that area, eight of which must be completed before the student can earn that designation. The Institute has granted approximately 58,000 CPCU designations since 1942. The Institute employs approximately 130 full-time workers. The Institute is exempt from federal income taxation under Section 501(c)(3) of the Internal Revenue Code, 26 U.S.C. § 501(c)(3).[1]

In 2004, the Property was assessed at $8,988,220.00. On June 29, 2004, the Institute appealed that assessment to the Chester County Board of Assessment Appeals (Board), claiming that the Property was exempt from real estate taxation. On September 10, 2004, the Board denied the appeal and found the Property subject to taxation. On October 7, 2004, the Institute appealed to the trial court, claiming that it is a "purely public charity" under the law and thus, is exempt from taxation. The trial court heard the Institute's appeal and thereafter denied its appeal. The Institute now appeals the trial court's determination to our court.[2]

The Institute contends that the trial court abused its discretion or committed an error of law in concluding that it failed to donate or render gratuitously a substantial portion of its services, that it did not benefit a substantial and indefinite class of persons who are the legitimate subjects of charity, and that it did not relieve the government of some of its burden.

An institution that is seeking a real estate tax exemption bears a heavy burden of proving first, that it is a 'purely public charity' pursuant to Article VIII, Section 2 of the Pennsylvania Constitution and only after that is proven, must the institution show that it meets the statutory qualifications in the Institutions of Purely Public Charity Act (Act), Act of November 26, 1997, P.L. 508, 10 P.S. §§ 371–385, as well. *See WRC North Fork Heights, Inc. v. Board of Assessment Appeals, Jefferson County,* 917 A.2d 893 (Pa.Cmwlth.2007). The test set forth by our Supreme Court for proving a 'purely public charity' pursuant to our Constitution is provided in *Hospital Utilization Project v. Commonwealth,* 507 Pa. 1, 487 A.2d 1306 (1985) (*HUP*). The *HUP* test provides that a 'purely public charity' must possess all of the following characteristics:

   (a) Advances a charitable purpose;

---

1. It is irrelevant that the Institute is exempt from paying federal income tax under Section 501(c)(3) of the Internal Revenue Code, 26 U.S.C. § 501(c)(3), when determining whether it is entitled to tax exemption under the laws of this Commonwealth. *Sacred Heart Healthcare System v. Commonwealth,* 673 A.2d 1021 (Pa.Cmwlth.1996).

2. Our review in a tax assessment appeal is limited to determining whether the trial court abused its discretion or committed an error of law or whether its decision is supported by substantial evidence. *ENF Family Partnership v. Erie County Board of Assessment Appeals,* 861 A.2d 438 (Pa.Cmwlth.2004), *appeal denied,* 584 Pa. 681, 880 A.2d 1241 (2005). A property owner's entitlement to tax exemption is a mixed question of fact and law and absent an abuse of discretion or a lack of supporting evidence, this court will not disturb the trial court's decision. *Lyons v. City of Philadelphia Board of Revision of Taxes,* 828 A.2d 485 (Pa.Cmwlth.2003).

(b) Donates or renders gratuitously a substantial portion of its services;

(c) Benefits a substantial and indefinite class of persons who are legitimate subjects of charity;

(d) Relieves the government of some of its burden; and

(e) Operates entirely free from private profit motive.

*HUP*, 507 Pa. at 21–22, 487 A.2d at 1317. The issues before our court are whether the trial court erred in determining that the Institute did not prove (b), (c), and (d) above.

■ First, the Institute contends that the trial court abused its discretion or committed an error of law in concluding that it failed to donate or render gratuitously a substantial portion of its services. The Institute specifically contends that it has rendered gratuitously a substantial portion of its services as the Institute operated at a deficit for 8 of the last 10 years, uses donations and income from endowments to finance educational programs to keep tuition low for all students and had uncompensated goods or services which are 7.84% of the Institution's total cost of education and research.[3]

■ According to the *HUP* test, in order to prove that the institution renders or donates gratuitously a substantial portion of its services, it must appear "that the organization makes a bona fide effort to service primarily those who cannot afford the usual fee." *HUP*, 507 Pa. at 19 n. 9,

487 A.2d at 1315 n. 9. The trial court found that the Institute failed to prove this and we agree. The record reflects that the Institute does not offer any financial aid for books or study guides, that less than 1% of the students receive scholarships, and that all students are required to pay the tuition.

In *Wyoming Valley Montessori Association, Inc. v. Board of Assessment*, 110 Pa.Cmwlth. 458, 532 A.2d 931 (1987), there were no students who attended that school free of charge, scholarships were limited to the children of faculty members, only 5 children were receiving partial scholarships, and scholarships totaled less than 10% of the school's enrollment. Our court determined that Wyoming did not make 'a bona fide effort to service primarily those who cannot afford the usual fee.' *Id.* at 933–934, *citing, HUP*, 507 Pa. at 19 n. 9, 487 A.2d at 1315 n. 9. Our court in *Wyoming* further cited our Supreme Court in *Pittsburgh Institute of Aeronautics Tax Exemption Case*, 435 Pa. 618, 624, 258 A.2d 850, 853 (1969), and determined that "[a] school in which the admission of students is almost totally limited to those who are able to pay their own way can hardly be considered a charitable institution." *Wyoming*, 532 A.2d at 933.

As the Institute does not offer any financial aid for books or study guides, less than 1% of its students receive scholarships and all of the students are required to pay the tuition, the trial court did not

---

**3.** As previously stated, "[a]n entity seeking a statutory exemption for taxation must first establish that it is a 'purely public charity' under Article VIII, Section 2 of the Pennsylvania Constitution before the question of whether that entity meets the qualifications of a statutory exemption can be reached." *Community Options, Inc. v. Board of Property Assessment, Appeals and Review*, 571 Pa. 672, 676, 813 A.2d 680, 683 (2002). Thus, the Institute's argument that it met the re-

quirement under the Act of proving "[u]ncompensated goods or services which in the aggregate are equal to at least 5% of the institution's costs of providing goods or services", in order to show that the institution renders or donates gratuitously a substantial portion of its services, is not relevant at this stage, as the Institute must first pass the *HUP* test to determine whether it is a purely public charity.

err in determining that the Institute failed to prove that it renders or donates gratuitously a substantial portion of its services pursuant to *HUP*.

■ Second, the Institute contends that the trial court abused its discretion or committed an error of law in concluding that it did not benefit a substantial and indefinite class of persons who are the legitimate subjects of charity. The Institute cites *American Law Institute v. Commonwealth*, 882 A.2d 1088 (Pa.Cmwlth. 2005), *aff'd*, 587 Pa. 589, 901 A.2d 1030 (2006) (*ALI*), to support its contention that it benefits society as a whole.[4] The Institute contends that it provides benefits to all people by instructing students in the ethical and proper administration of property and casualty insurance benefits, by the distribution of its text books, the use of its professors at speaking engagements, and also by its instructions to students on ethics. However, our court has previously determined that institutions that are established for the benefit of a profession or occupation do not benefit an indefinite number of people. *PICPA Foundation for Education & Research v. Board of Finance & Revenue*, 535 Pa. 67, 634 A.2d 187 (1993) (benefits for persons with a professional or occupational interest in accounting does not benefit an indefinite number of people); *Board of Revision of Taxes v. American Board of Internal Medicine*, 154 Pa.Cmwlth. 204, 623 A.2d 418 (1993) (doctors seeking professional advancement are not legitimate objects of charity).

In the present controversy, eighty percent of the students enrolled at the Institute are insurance professionals. Thus,

the Institute failed to prove that its students were legitimate subjects of charity. The trial court was correct in determining that the Institute did not benefit a substantial and indefinite class of persons who are the legitimate subjects of charity.

■ Finally, the Institute contends that the trial court abused its discretion or committed an error of law in concluding and that it did not relieve the government of some of its burden. The Institute states that it provides classes and education in insurance and that this relieves the government of some of its burden of providing a great many students classes in insurance. It further states that the course work it provides helps insurance company employees with, among other things, work on natural disasters and acts of terrorism. The Institute cites *City of Washington v. Board of Assessment Appeals and Washington & Jefferson College* (W&J), 550 Pa. 175, 186, 704 A.2d 120, 125 (1997), which states that:

were it not for the existence of independent colleges and universities the demands placed on the state's institutions would be vastly expanded.

As Chief Justice Flaherty noted in *W&J*:

W&J, like other independent colleges and universities, relieves the load placed on the state-owned system of colleges and universities.... Inasmuch as the Commonwealth has taken on the responsibility of providing higher education for its residents, it is clear that were it not for the existence of independent colleges and universities the demands placed on the state's institutions would be vastly expanded. The legislature has expressly recognized the role of private institu-

---

4. In *ALI*, our court determined that the ALI was a 'purely public charity,' as the ALI does more than benefit attorneys, it benefits society as a whole with, among many other things, developing the Uniform Commercial Code

and the Model Penal Code. As such, we determined that the ALI benefits a substantial and indefinite class of persons who are legitimate subjects of charity.

tions in this regard by providing them with institutional assistance grants that cover a small percentage of their costs.... The legislature has declared that independent colleges and universities 'make a significant contribution to higher education in the Commonwealth' ... and that if such institutions were inhibited in their ability to provide such education it would *'increase the burden on public institutions.'"* (Emphasis in Original).

*Id.* at 186, 704 A.2d at 125. The Institute, on the other hand, is established to educate and certify business professionals specializing in a particular area of their occupation, i.e., property and casualty insurance. We have held that a foundation whose primary purpose was to educate members of the accounting profession in subjects in that profession, were for the benefit of only those individuals who had an occupational interest in accounting subjects and any education of the public was only incidental to that purpose. *PICPA.* Also, in *Board of Revision of Taxes,* we held that government does not require the certification of doctors who specialize in a certain area of medicine. Here, there was not substantial evidence that the government had a duty to educate or certify insurance professionals. Although the Institute may relieve the insurance industry of its burden, if any, to educate and certify in this regard, the trial court was correct in determining that the government has no duty to provide or require the certification of insurance professionals. Thus, in the present controversy, the trial court was correct in finding that the Institute does not relieve the government of some of its burden.

In any event, besides failing to relieve the government of some of its burden, the other *HUP* test requirements were definitely not satisfied. The Institute, in seeking status as a purely public charity, failed to show that it donated or gratuitously rendered a substantial portion of its services and, in addition, failed to show that it benefited a substantial and indefinite class of persons who are legitimate subjects of charity.

Accordingly, we affirm the order of the trial court.

### ORDER

AND NOW, this 6th day of July, 2007 the order of the Court of Common Pleas of Chester County in the above-captioned matter is affirmed.