455 A.2d 1170

WEST ALLEGHENY HOSPITAL, Appellant,

v.

BOARD OF PROPERTY ASSESSMENT, APPEALS AND REVIEW OF ALLEGHENY COUNTY and West Allegheny School District.

Supreme Court of Pennsylvania.

Argued Sept. 21, 1982.

Decided Dec. 23, 1982.

Reargument Denied Feb. 1, 1983.

Samuel Y. Stroh, Raymond H. Bogaty, Pittsburgh, for appellant.

Jane D. Elliott, Duane, Morris & Heckscher, Philadelphia, for amicus curiae Hospital Ass'n of Pa.

D.R. Pellegrini, W. Theodore Brooks, Pittsburgh, for West Allegheny School Dist.

William J. Fahey, John M. Silvestri, Patrick J. Loughney, Pittsburgh, for Bd. of Property Assessment, Appeals and Review of Allegheny County.

Before O'BRIEN, C.J., and ROBERTS, NIX, LARSEN, McDERMOTT and HUTCHINSON, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

At issue on this appeal is whether the health care facilities of appellant West Allegheny Hospital, a non-profit corporation founded in 1956, are exempt from real estate taxes imposed by appellee West Allegheny School District. Two facilities are involved, one of which was acquired by appellant in late 1964 and was in operation until 1973, the other of which was built by appellant in 1973 and has been in operation since.

The Board of Property Assessment, Appeals and Review of Allegheny County denied both of appellant's applications for an exemption. After evidentiary hearings, the Court of Common Pleas of Allegheny County entered orders sustaining both of appellant's appeals from the adverse rulings of the Board. A divided panel of the Commonwealth Court entered an order reversing the orders of the court of common pleas. This Court granted allowance of appeal.

After a review of our case law interpreting the relevant constitutional and statutory provisions, we conclude that the present record establishes appellant's entitlement to an exemption with respect to both health care facilities. Hence, we reverse the order of the Commonwealth Court and reinstate the orders of the court of common pleas. 63 Pa.Cmwlth. 555, 439 A.2d 1293.

The basis for appellant's claims of exemption is section 204(a)(3) of the General County Assessment Law, Act of May 22, 1933, P.L. 853, as amended, 72 P.S. § 5020–204(a)(3) (Supp.1982), a statute enacted by the Legislature pursuant to its constitutional authority to confer tax-exempt status on "institutions of purely public charity," Pa. Const. art. VIII, § 2.[1] Section 204(a)(3) confers an exemption on "[a]ll hospi-

1. Pa. Const. art. VIII, § 2 provides:
    "The General Assembly may by law exempt from taxation ... [i]nstitutions of purely public charity, but in the case of any real property tax exemptions only that portion of real property of such institution which is actually and regularly used for the purposes of the institution."

tals, universities, colleges, seminaries, academies, associations and institutions of learning, benevolence, or charity, including fire and rescue stations, with the grounds thereto annexed and necessary for the occupancy and enjoyment of the same, founded, endowed, and maintained by public or private charity ...." These requirements are subject to the following: "Provided, That the entire revenue derived by the same be applied to the support and to increase the efficiency and facilities thereof, the repair and the necessary increase of grounds and buildings thereof, and for no other purpose."

■ It is clear that appellant's facilities are "purely public" within the meaning of Pa. Const. art. VIII, § 2. "[T]he word 'purely' is prefixed by the constitution ... to intensify the word 'public,' not 'charity.' It must be purely public; that is, there must be no admixture of any qualification for admission, heterogeneous, and not solely relating to the public." *City of Philadelphia v. Masonic Home of Pennsylvania,* 160 Pa. 572, 578–79, 28 A. 954, 955 (1894). By-laws of the corporation provide that "no distinction shall be made in the admission or treatment of patients in regard to race, color, creed, national origin or sex," a policy which has been adhered to in practice. Compare *City of Philadelphia v. Masonic Home of Pennsylvania,* supra (home for aged men restricting eligibility to Freemasons not "purely public"). Since its inception, appellant has maintained an "open-admission policy," pursuant to which appellant has provided comprehensive health care without regard to a patient's ability to pay.

It is also clear that each of appellant's facilities is a "hospital," an institution specifically deemed eligible by the Legislature for tax-exempt status, with a recognized charitable purpose—the promotion of health. See Restatement (Second) of Trusts § 372 (1959).[2] So, too, there is no ques-

2. As was summarized by one of appellant's witnesses, West Allegheny is a "typical community hospital." Appellant's services include emergency, out-patient, and in-patient acute medical care. Appellant is a member of the Hospital Association of Pennsylvania, the South-

tion that appellant was charitably founded, as a non-profit corporation devoted to the "delivery of comprehensive health care" to the West Allegheny community.

■ What is disputed is whether appellant has been "endowed and maintained by public or private charity." It is apparent on the present record that, although appellant has been the object of considerable generosity, both public and private, both quantifiable and not, this generosity has not been sufficient to offset the cost of capital acquisition. Approximately $565,000 of the $590,000 total cost of the first facility and $3 million of the $4.3 million total cost of the second facility were financed by appellant. Similarly, cash donations have covered only a small portion of appellant's day-to-day operating expenses, which include the costs of administrative and professional salaries, supplies, and utilities. Thus, both the cost of capital acquisitions and the cost of day-to-day operating expenses which have not been covered by donations have been passed along to patients, who have paid approximately 80% of the amounts billed.[3] This high percentage of payment is attributable both to health care insurance carried by patients and the efforts of a debt-collection agency employed by appellant.

In denying appellant's exemption claims, the Commonwealth Court held that appellant's patient billings have placed a disproportionate burden of appellant's operational costs on patients. This holding, however, fails to consider the proviso to section 204(a)(3), which authorizes specific applications of "revenue"—a term which includes funds earned by the rendering of services. Such funds may be applied not only to "support" the institution but also "to *increase* the efficiency and *facilities thereof,* the repair and *necessary increase of grounds and buildings* thereof ..."

ern Allegheny County Hospital Association, and the American Osteopathic Hospital Association, and has been accredited by the Joint Council on Hospital Accreditation.

3. The major portion of appellant's billings have been scrutinized by third-party payors for excessive costs. See generally *Associated Hospital Service of Philadelphia v. Pustilnik,* 497 Pa. 221, 439 A.2d 1149 (1981).

(emphasis added). This legislative definition of the scope of permissible applications of revenues—here, funds derived from patient billings—recognizes that the support and repair of the institution need not be funded solely by charity, and that necessary capital acquisitions need not be financed completely through charitable endowments.[4]

The record is clear that appellant has satisfied these terms of the statutory proviso. Revenues from patient billings have been properly applied to the day-to-day operating expenses of appellant's institutions, including the expenses of support and repair. The revenues also have been properly applied to the costs of financing the acquisition of facilities necessary to the fulfillment of the institution's charitable purpose.

Finally, the revenues from patient billings have, in the words of the proviso, been used by appellant *"for no other purpose"* than to contribute to "the support [of the institution] and the increase of the efficiency and facilities thereof, the repair and the necessary increase of grounds and buildings thereof." Although appellant was founded in part by two doctors who have been compensated by appellant for their work in various administrative capacities, the record establishes that the doctors' work has been necessary to the functioning of appellant's facilities and has been paid for at rates equal to or less than the rates paid by comparable institutions for comparable services. See Restatement (Second) of Trusts, supra, § 376 Comment b. The same founding doctors were the principal shareholders of the corporation which had owned the facility in 1964, immediate-

---

4. Any other reading of the proviso would yield unreasonable results. As this record indicates, construction costs for a facility frequently involve several millions of dollars, and "prime" real estate must often be acquired if the facility is to be able to fulfill the institution's charitable purpose. One would have to be removed from modern-day realities to believe that such costs are easily subsidized, even in part; and yet if such costs were not the proper subject of the application of funds derived from beneficiaries of the institution, the language "endowed . . . by public or private charity," if not qualified by the proviso, would require subsidization in full.

ly preceding its acquisition. However, the record reveals that the acquisition price of $590,000 was reasonable, being $43,000 less than the lower of two appraisals which had been considered by the board of trustees.[5]

Our reading of the proviso to section 204(a)(3) of the General County Assessment Law is supported by *Presbyterian Homes Tax Exemption Case,* 428 Pa. 145, 236 A.2d 776 (1968), a case interpreting provisions of The Fourth to Eighth Class County Assessment Law which are comparable to the provisions of section 204(a)(3). See Act of May 21, 1943, P.L. 571, § 202(a)(3), 72 P.S. § 5453.202(a)(3) (1968). There it was held that a residence for elderly citizens was entitled to an exemption as a charity even though "many residents [paid] their way completely and 80 per cent of the operational costs [were] paid by the residents . . . ." 428 Pa. at 153, 236 A.2d at 780. See *Episcopal Academy v. City of Philadelphia,* 150 Pa. 565, 25 A. 55 (1892); Restatement (Second) of Trusts, supra, § 376 Comment c.

Appellee, however, relies upon language in our early case law which would suggest that the costs of necessary capital acquisition are not appropriately passed along to the beneficiaries of an institution. For example, in *Y.M.C.A. of Germantown v. City of Philadelphia,* 323 Pa. 401, 187 A. 204 (1936), this Court quoted a dictionary's definition of "chari-

5. Appellee School District advances several arguments which are secondary to the primary issue of whether appellant is entitled to an exemption, none of which warrants extended discussion. With respect to the claim that appellant failed to lay a proper foundation for the testimony of a witness who had prepared summaries of appellant's financial data, the record is clear that that witness supplied no evidence in support of facts material to a resolution of the present dispute which had not already been acknowledged by appellee. As to appellee's claims relating to the timeliness of appellant's exemption applications filed with the Board of Property Assessment and appellant's request for reconsideration of the initial denial of an exemption for the facility acquired in 1964, the court of common pleas correctly held that appellee has failed to establish the claims. We also agree with the court of common pleas that, contrary to appellee's contention, appellant has established that those properties which the court deemed to be tax-exempt have been used for charitable purposes.

ty" to support its conclusion that "whatever [a charitable institution] does for others is done free of charge, or at least so nearly free of charge as to make the charges nominal or negligible . . . ." 323 Pa. at 411–12, 187 A. at 209. Notwithstanding this language, our reading of the proviso to section 204(a)(3) convinces us that the word "charity" as used by the Legislature does not contemplate the requirement that there be only a nominal charge to beneficiaries. Such a requirement clearly conflicts with the evident intent of the proviso to accommodate evolving institutional needs in the light of limits to public and private generosity. Accordingly, the language in *Germantown Y.M.C.A.* must be disapproved.

The order of the Commonwealth Court is reversed and the orders of the Court of Common Pleas of Allegheny County are reinstated.

FLAHERTY, J., did not participate in the consideration or decision of this case.

NIX, J., files a dissenting opinion, in which HUTCHIN-SON, J., joins.

NIX, Justice, dissenting.

The majority appears to have centered its analysis upon the fact that appellant is a hospital and concludes that because a hospital promotes health, if it is public, it should be tax exempt. However, our case law has established a three-pronged test to be applied when a claim is made for real estate tax exemption under the Pa. Const., art. VIII, § 2 and 72 P.S. § 5020–204(a)(3) (Supp.1981–82). The test is set forth in *Woods School Tax Exemption Case,* 406 Pa. 579, 584, 178 A.2d 600, 602 (1962):

[T]o obtain the claimed exemption from taxation, [appellant] must affirmatively show that the entire institution, (1) *is* one of "purely public charity"; (2) was *founded*

by public or private charity; (3) is *maintained* by public or private charity. [Emphasis added.]

*Accord, Four Freedoms House of Phila., Inc. v. City of Philadelphia,* 443 Pa. 215, 279 A.2d 155 (1971); *Pittsburgh Institute of Aeronautics Tax Exemption Case,* 435 Pa. 618, 258 A.2d 850 (1969).

Moreover, in *Four Freedoms House of Phila., Inc. v. City of Philadelphia, supra,* a review of the pertinent law for such cases revealed:

> Since liability of all real estate is the rule with exemption the exception, *e.g., Dougherty v. City of Philadelphia,* 112 Pa.Superior Ct. 570, 172 Atl. 177 (1934), the burden is placed on the claimant to bring itself within the exemption. *E.g., Pittsburgh Institute of Aeronautics Tax Exemption Case,* 435 Pa. 618, 258 A.2d 850 (1969); *University of Pittsburgh Tax Exemption Case,* 407 Pa. 416, 180 A.2d 760 (1962); *Wynnefield United Presbyterian Church v. City of Philadelphia,* 348 Pa. 252, 35 A.2d 276 (1944); *Albright College Tax Assessment Case,* 213 Pa.Superior Ct. 478, 249 A.2d 833 (1968). Moreover, statutory provisions exempting property from taxation are subject to a strict construction. *E.g., Y.M.C.A. v. Reading,* 402 Pa. 592, 167 A.2d 469 (1961); *McGuire v. Pittsburgh School District,* 359 Pa. 602, 60 A.2d 44 (1948).

433 Pa. at 218, 379 A.2d at 157.

Turning to the case at bar, appellant's "open-admission policy" coupled with adherence to its by-laws' prohibition against discrimination or a distinction in the admission of patients based upon race, color, creed, national origin or sex, may satisfy the public part of the first prong of the test.[1]

Yet, the second and third prongs also must be met. The majority rather summarily dispenses with the requirement of having been *founded* by a public or private charity by noting the institution has a purpose, the promotion of

1. We note that the first prong also requires a pure charity element which is not satisfied merely by the dispensing of medical service.

health, which has been accepted as a charitable purpose in regards to an *inter vivos* or testamentary trust. This simply will not suffice. The key question in the second prong of the three-pronged test is not whether the institution's activities comply with a definition of charitable purpose but, rather, was the institution begun or founded by gift, either public or private. The fact that appellant corporation is "non-profit" is not decisive of this issue. *See, Metropolitan Pittsburgh Nonprofit Housing Corporation v. Bd. of Property Assessment,* 480 Pa. 622, 391 A.2d 1059 (1978).

An objective examination of the record reveals that the original property purchased by Drs. Roberts and Grilli in 1956 for a very low price, less than $40,000.00, was deeded to the Tioga Corporation (which is not asserted to have been non-profit and whose principal shareholders were Drs. Roberts and Grilli). A parcel of the original property was sold to the appellant West Allegheny Hospital, (a non-profit corporation whose incorporators were Drs. Roberts, Grilli, Shelhorse, Mrs. Roberts and Mrs. Grilli) for a purchase price of $590,000.00 after having charged and received rent from West Allegheny Hospital for at least nine years. In addition to the huge profit in this transfer, it is also significant that appellant corporation's first capital acquisition accrued nine years after its incorporation. The record does not support a conclusion that the founding of West Allegheny Hospital was by gift.[2] Such a conclusion is necessary to give this prong of the test any meaning. Therefore, the second prong of the test has not been met.

Finally, the third prong of the test has not been met either. Patients have paid or caused to be paid approximately 97% of the amounts billed for in-patient care and 80% of the amounts billed for out-patient care. In addition to payments from third-party payors, appellant has received huge federal sums and employs a collection agency for

2. After a careful review of the record, I find no evidence of founding monetary gifts. At inception, there were loans made to West Allegheny Hospital. The loans were repaid *with interest.*

outstanding patient accounts. The majority's use of the word "revenue" in the proviso to section 204(a)(3) in order to overcome the blatant fact that Drs. Roberts and Grilli have passed the substantial operating costs *and* capital acquisition costs on to patients and/or the public without any significant accompanying gifts at founding or for maintenance is not in accord with the required strict construction of the statute involved nor the constitutional concept of a "purely public charity."

It was stated in *Hill School Tax Exemption Case,* 370 Pa. 21, 23, 87 A.2d 259, 261 (1952). "It requires no citation of authority to demonstrate that a private hospital founded and maintained by a group of doctors for their own convenience, with or without profit, would not qualify for such tax exemption." It requires no citation of authority to show that a non-profit corporation serving the public as a hospital but (1) founded by several doctors and their wives, without identifiable or quantifiable gift, (2) paid rent to a private corporation owned by two of the same doctors for nine years, (3) delivered a capital gain of over $550,000.00 to that private corporation owned by two of the same doctors, (4) received approximately $1,500,000 in federal money for capital improvements, (5) whose patients cover the major portion of appellant's operating expenses by paying approximately 97% or 80% of the amount billed through hospital third-party coverage or a collection agency, (6) whose physicians pay a "bed-tax" to the hospital and (7) receives payments from this Commonwealth for treatment of those on welfare, does not qualify for the tax exemption.

Passing a substantial part of operating costs on to appellant's health care consumers is one thing. Passing an additional part of appellant's costs on to the public by way of a constitutional real estate tax exemption under these facts is quite another. I would affirm the Commonwealth Court.

HUTCHINSON, J., joins in this dissenting opinion.