577 A.2d 220

In re Appeal of PITTSBURGH NMR INSTITUTE and Magee Womens Health Foundation From Action of Allegheny County Board of Property Assessment Appeals and Review, City of Pittsburgh; Pittsburgh School District; Allegheny County; the Allegheny County Board of Property Assessment Appeals and Review.

### Appeal of MAGEE–WOMEN'S HEALTH FOUNDATION and Pittsburgh NMR Institute.

Commonwealth Court of Pennsylvania.

Argued Feb. 6, 1990.

Decided June 13, 1990.

Reargument Denied August 3, 1990.

Mark D. Shepard, Buchanan & Ingersoll Professional Corp., Pittsburgh, for appellant.

Ronald H. Pferdehirt, Asst. City Sol., with him, D.R. Pellegrini, City Sol., for appellee, City of Pittsburgh.

Kellen McClendon, Professor of Law, Duquesne University, Pittsburgh, amicus curiae.

Before COLINS and SMITH, JJ., and BARRY, Senior Judge.

## OPINION

BARRY, Senior Judge.

The Pittsburgh NMR Institute (the Institute) and the Magee Womens Health Foundation (the Foundation) appeal an order of the Court of Common Pleas of Allegheny County which dismissed their appeal and affirmed an order of the Allegheny County Board of Property Assessment, Appeals and Review (the Board) withdrawing the tax exemption from real estate taxation of a parcel of property owned by the Foundation and leased by the Institute.

The Foundation receives charitable contributions to fund research projects at the Magee Womens Hospital and other institutions. The Institute was founded by twelve non-profit hospitals in western Pennsylvania in 1984. With monies raised by a tax exempt bond issue, the Institute constructed a building which houses two magnets employing nuclear magnetic resonance technology, a non-intrusive method of obtaining detailed two dimensional images of the human body which can be used for the diagnosis and treatment of injury and disease. The Institute owns the building and equipment; it leases the lot from the Foundation.

In January of 1986, the Board notified both the Foundation and the Institute that it was withdrawing their exemption from real estate taxation. They appealed the withdrawal but the Board, following a hearing, denied the appeal. The Institute and the Foundation took another appeal and following a de novo hearing the trial court affirmed the Board's order. This appeal followed.

The Institute and the Foundation base their claim to an exemption upon Section 204 of the General County Assessment Law, Act of May 22, 1933, P.L. 853, *as amended*, 72 P.S. § 5020–204(a)(4), which provides an exemption from all real estate taxes for "[a]ll hospitals, universities, colleges, seminaries, academies, associations and institutions of learning, benevolence, or charity ... founded, endowed, and maintained by public or private charity...." The Statutory Construction Act of 1972 provides that stat-

utes exempting property from taxation are to be strictly construed. 1 Pa.C.S. § 1928(b)(5). Accordingly, one claiming entitlement to such an exemption bears a "heavy burden" of proving the property in question falls within the exemption. *Appeal of Lutheran Home of Topton,* 100 Pa.Commonwealth Ct. 244, 250, 515 A.2d 59, 62 (1986). In the present case, it was incumbent upon the Foundation and the Institute to prove that it is a "purely public charity" in order to qualify for the exemption. Pa. Const. art. VIII, sec. 2(a)(v). Finally, the question of whether an institution is a purely public charity is a mixed question of fact and law. *Lutheran Home.*

In *Hospital Utilization Project v. Commonwealth,* 507 Pa. 1, 487 A.2d 1306 (1985), the Supreme Court listed those items which must all be proven to show that one claiming an exemption is a purely public charity. To so qualify, the institution must prove it

(a) Advances a charitable purpose;

(b) Donates or renders gratuitously a substantial portion of its services;

(c) Benefits a substantial and indefinite class of persons who are legitimate subjects of charity;

(d) Relieves the government of some of its burden; and

(e) Operates entirely free from the private profit motive.

*Id.,* 507 Pa. at 22, 487 A.2d 1317. With all of the foregoing in mind, we will review the allegations of error set forth by the Foundation and the Institute.

Before proceeding any further, we point out that the Institute owns the building and all equipment and improvements thereon. The Foundation, however, owns the lot upon which the building is situated and leases the lot to the Institute. According to an exhibit introduced at trial, the lot's assessed value was $35,500 and the assessed value of the building was $239,500. Although the Foundation and the Institute have filed a single brief and are represented by the same counsel, their arguments, although overlapping at times, deal with entirely different interests.

 The Foundation argues that the trial court erred when it denied the exemption as to the lot. The Foundation argues in its brief:

Magee Womens Hospital (the 'Hospital'), during the time it owned the real property prior to the construction of the Institute, used the real property for the support and maintenance of the Hospital as a parking lot for its employees. That real property was simply transferred to the Foundation as part of the Hospital's Plan of Division. Just as when it was a parking lot, however, the property is still used and occupied by the Hospital and the Foundation, through the Hospital's membership in the Institute and the treatment of its patients at the Institute as well as through the Foundation's funding of research at the Institute. By failing to recognize this actual use and occupancy of the real property by the Hospital and the Foundation, the court below elevated form over substance.

(Appellants' brief, pp. 37–38). We can find no merit to the Foundation's argument.

We note initially that we need not decide in this case whether the Foundation is a purely public charity; for purposes of the present analysis, we will assume that it is. In *Greater Erie Economic Development Corporation Appeal*, 61 Pa.Commonwealth Ct. 144, 433 A.2d 568 (1981), we held that property owned by a charitable organization which is leased *to another charitable organization* does not qualify for the exemption at issue in the present case unless it can be show that the owner uses and occupies the premises. There, the owning charitable organization held the meetings of its board of directors on the premises. As we stated, "Even assuming that this fact establishes that [the lessor] occasionally 'uses' the subject premises, there is no evidence that [the lessor] in any way 'occupies' its premises or that the property is at present 'necessary for the occupancy and enjoyment' of [the lessor]." *Id.*, 61 Pa.Commonwealth Ct. at 149, 433 A.2d at 570.

We believe the Foundation's argument that it "owns and occupies" the premises falls well short of meeting its heavy burden of proving entitlement to the exemption. First, whatever use Magee Womens Hospital made of the property before it turned it over to the Foundation is of no relevance. While the Foundation complains of the trial court's elevation of form over substance, it was the Foundation and the Hospital that chose to use the forms involved herein; they are not permitted to disregard these formal distinctions when those distinctions are not advantageous to them. Further, the arguments that the Foundation "uses and occupies" the premises because of the Hospital's membership in the Institute, the treatment of patients at the Institute and the Foundation's funding of research at the Institute is, at best, sophistic.

■ The Foundation also argues that the Institute holds an equitable interest in the leased portion of the premises sufficient to entitle it to the exemption. Because we decide that the Institute did not prove that it was a purely public charity and therefore is not entitled to the exemption, we need not decide whether the Institute is more than a mere lessee.

The Institute makes essentially two arguments on its behalf. It first argues that the trial court erred when it used the standards set forth in *Hospital Utilization Project* without considering *West Allegheny Hospital v. Board of Property Assessment, Appeals and Review of Allegheny County,* 500 Pa. 236, 455 A.2d 1170 (1983). The Institute argues that its situation is indistinguishable from the hospital in *West Allegheny* and that case therefore requires that the Institute be given the exemption. We do not agree.

In *West Allegheny,* the Supreme Court held that the hospital was entitled to the real estate tax exemption because of two factors. The Court first held that the hospital was a purely public charity because it had a recognized charitable purpose, the promotion of health, and because it "has maintained an 'open admission policy,' *pursuant to*

*which [the hospital] has provided comprehensive health care* without regard to a patient's ability to pay." *Id.,* 500 Pa. at 239, 455 A.2d at 1171. The court also considered that revenue from patient billings paid a large share of the hospital's costs of capital acquisition and day to day operating expenses. The court held that this fact did not disqualify the hospital from the exemption under the proviso that the hospital had to be "endowed and maintained by a public or private charity."

When the Supreme Court decided *Hospital Utilization Project,* it discussed what one must prove to show an entitlement to the exemption. In so doing, the court expanded the test which had been set forth in *West Allegheny.* In fact, in *Hospital Utilization Project,* the institution there claimed that it fell within the ambit of *West Allegheny.* The court rejected that argument, pointing to the *West Allegheny* hospital's open admission policy and then stating, "HUP has no such open-admission policy. Nothing in the record supports a finding that HUP *provides* its services without regard to the health care facility's ability to pay." *Hospital Utilization Project,* 507 Pa. at 21, 487 A.2d at 1316 (emphasis added).

We think that two essential points must be made concerning *West Allegheny.* First, the trial court did not err in using the test set forth by the Supreme Court in *Hospital Utilization Project* as that was the *more recent* pronouncement by that court on the subject at hand. Furthermore, *West Allegheny* is distinguishable from the present case. It is true that various witnesses testified that the Institute has an open admission policy. When it comes to the actual donation of those services, Dr. Gerald Wolf, the president and medical director of the Institute, testified:

Our pattern has been to initially start off with things that were not animate in order to find out how to do a particular thing. When we thought there was a particular examination we would do, we would initially ask for volunteers and learn how to do that. Then we would ask

for patients who actually had diseases to come in and we would do that. None of that was billed.

*But once we felt we could do something useful, we then would bill for it.* Society would make their own determination as to whether or not they would reimburse, *but as soon as we felt that the procedure had value for a patient who had been referred for that study, we billed.*

(Notes of testimony, 6/5/89, pp. 20–21) (emphasis added). The mere existence of a policy is not enough. To meet its burden of proving entitlement to the exemption, the Institution was required to prove that it actually provided its valuable services to someone who could not afford to pay.

The failure to prove donation of valuable services, the distinguishing factor between the present case and *West Allegheny,* is also dispositive on the question of whether the Institute met its burden under *Hospital Utilization Project.* Dr. Wolf's own testimony showed that the Institute would donate its services only while it was unsure that the services were of any value. While we do not intend to denigrate the work done by the Institute, it is clear that the Institute has failed to prove that it donated a "substantial" portion of its services. For that reason alone, the trial court did not err in holding that the Institute had failed to prove that it was entitled to the exemption.[1]

Over fifty years ago, the Supreme Court observed:

Taxes are not penalties but are contributions which all inhabitants are expected to make (and may be compelled to make) for the support of the manifold activities of government. Every inhabitant and every parcel of property receives governmental protection. Such protection costs money. When an inhabitant fails to contribute his share of the costs of this protection, some other inhabitant must contribute more than his fair share of that cost. There are substantial reasons why an institution

---

1. The trial court went on to state that the Institute failed to meet its burden with regard to all five prongs of the Hospital Utilization Project test. Because we are convinced that the Institute failed to prove that it donated a substantial portion of its services, we need not discuss the remainder of the trial court's opinion.

*wholly devoted to public charity* should be exempt from taxation, since one of the duties of the government is to provide food and shelter for the poor. Any institution which by its charitable activities relieves the government of part of this burden is conferring a pecuniary benefit upon the body politic, and in receiving exemption from taxation it is merely being given a 'quid pro quo' for its services in providing something which otherwise the government would have to provide.

*Y.M.C.A. of Germantown v. Philadelphia,* 323 Pa. 401, 413, 187 A. 204, 210 (1936) (emphasis added). This court has recently stated that a laudable motive is not sufficient to grant one an exemption from taxation. *Scripture Union v. Deitch,* 132 Pa.Commonwealth Ct. 134, 572 A.2d 51 (1990). While the Institute's motives are not questioned here, the Institute simply did not meet its heavy burden of proving its entitlement to an exemption. We will thus affirm the able opinion and order of the Honorable I. Martin Wekselman of the Court of Common Pleas of Allegheny County.

### ORDER

NOW, June 13, 1990, the order of the Court of Common Pleas of Allegheny County, dated July 18, 1989, at No. G.D. 87–11509, is affirmed.

CRUMLISH, Jr., former President Judge, and PELLEGRINI, J., did not participate in the decision in this case.