611 A.2d 793

**The ALLENTOWN HOSPITAL–LEHIGH VALLEY HOSPITAL CENTER, Appellant,**

**v.**

**BOARD OF ASSESSMENT APPEALS, LEHIGH COUNTY, Pennsylvania and Salisbury Township School District and Lehigh County, Pennsylvania, Appellees.**

Commonwealth Court of Pennsylvania.

Argued March 2, 1992.

Decided June 9, 1992.

Petition for Allowance of Appeal Denied Nov. 18, 1992.

Oldrich Foucek, III, for appellant.

Thomas F. Traud, Jr., for appellees.

Before DOYLE and FRIEDMAN, JJ., and LEDERER, Senior Judge.

DOYLE, Judge.

Before us for disposition is an interlocutory order which we granted permission to appeal pursuant to Section 702(b) of the Judicial Code, 42 Pa.C.S. § 702(b).

The following facts are relevant. The Lehigh County Board of Assessment and Appeals (Board) renewed the tax exempt status of the "Salisbury campus" of the Lehigh Valley Hospital Center (Hospital). Thereafter, the School District of the Township of Salisbury, alleging itself aggrieved by this determination, appealed to the Board. The Township of Salisbury and the City of Lehigh joined in this appeal. Subsequently, the Board revoked the tax exempt status for the Salisbury campus.[1]

_____

1. Incorporated within these proceedings are appeals by the Hospital to have other of its properties declared tax exempt as well. Relief was granted with regard to some but not all properties. The propriety of the Board's actions with regard to those determinations is not before us at this time.

The Hospital appealed to the common pleas court contending that the Board acted erroneously in revoking its tax exempt status for the Salisbury campus. It also appealed from the refusal to grant initially the tax exempt status to some of its other properties. *See supra* note 1. By stipulation the matters were consolidated before the trial court for purposes of a hearing, but not a decision. After filing its appeals with the trial court the Hospital then filed a motion *in limine* asking for a ruling that the test to be applied to determine whether the Hospital is entitled to a tax exemption is that set forth in Section 204 of what was formerly titled The General County Assessment Law, Act of May 22, 1933, P.L. 853, *as amended,* 72 P.S. § 5020–204. Section 204 gives real estate tax exemption to:

(3) All hospitals, universities, colleges, seminaries, academies, associations and institutions of learning, benevolence, or charity, including fire and rescue stations, with the grounds thereto annexed and necessary for the occupancy and enjoyment of the same, founded, endowed, and maintained by public or private charity: Provided, That the entire revenue derived by the same be applied to the support and to increase the efficiency and facilities thereof, the repair and the necessary increase of grounds and buildings thereof, and for no other purpose.

Essentially, the Hospital wished to obtain a ruling that Section 204(a)(3), as interpreted in *West Allegheny Hospital v. Board of Property Assessment,* 500 Pa. 236, 455 A.2d 1170 (1982), would be the legal standard by which its activities would be judged. It sought to preclude use of the standard set forth in *Hospital Utilization Project v. Commonwealth,* 507 Pa. 1, 487 A.2d 1306 (1985) *(HUP)*. *HUP* interpreted the phrase "purely public charity" as that term is found in Article VIII, Section 2(a)(v) of the Pennsylvania Constitution, the provision which authorized Section 204.[2] According to the

2. That Constitutional provision reads:
(a) The General Assembly may by law exempt from taxation:
. . . .
(v) Institutions of purely public charity, but in the case of any real property tax exemptions only that portion of real property of such

Hospital's position, the legislature by enacting the statutory provision appearing in Section 204(a)(3) "has determined as a matter of legislative prerogative and public policies that a hospital meeting the statutory test *is* a purely public charity" (emphasis added). Motion for Ruling in Limine, paragraph 11. Further, the Hospital maintains that "the court in *West Allegheny,* amplified [the] language [in Section 204(a)(3) ] by holding that whether a hospital with a recognized charitable function to promote health is purely public, depends upon whether it is open to all and provides no private inurement. Only other charities which are unspecified and not listed by specific charitable purposes in the statute . . . must prove that they are purely public charities as that term has been defined [in *HUP* ]." Motion for Ruling in Limine filed by the Hospital, paragraph 11.

Under the *HUP* test, to be entitled to a charitable exemption the entity seeking the exemption must demonstrate that it:

(a) Advances a charitable purpose;

(b) Donates or renders gratuitously a substantial portion of its services;

(c) Benefits a substantial and indefinite class of persons who are legitimate subjects of charity;

(d) Relieves the government of some of its burden; and

(e) Operates entirely free from private profit motive.

*HUP,* 507 Pa. at 22, 487 A.2d at 1317. The Hospital seeks to avoid presenting evidence to meet the *HUP* test, in particular, the second prong of the test.

In the alternative, the Hospital sought before the trial court to limit the evidence with regard to the second prong of the *HUP* test by asking the trial court to agree to employ a quantitive formula it had established in another hospital tax assessment case, *St. Luke's Hospital v. Board of Tax Assessment Appeals of Lehigh County,* No. 88–C–2691 (filed April 19, 1990). In *St. Luke's,* the Court of Common Pleas of Lehigh County articulated:

institution which is actually and regularly used for the purposes of the institution.

I conclude that the following formula must be applied to hospitals in general, and to St. Luke's in particular.

A community hospital will be deemed to have contributed a substantial amount of uncompensated care if in any budget year it:

(a) operated at a loss in its preceding budget year, considering all sources of income; or,

(b) donated uncompensated care in an amount at least equal to:

(i) 75% of its profits from all sources realized in its preceding budget year; or,

(ii) 51% of its profits from all sources realized in its preceding budget year if the Board of Trustees has approved a new construction or major renovation plan to its hospital buildings, either of which plan is in progress or where work will begin within 4 years. This percentage becomes inapplicable when the new or renovated space becomes operational, and is inapplicable when the hospital holds funds equal to 51% of the anticipated cost of the project.

Trial court opinion in *St. Luke's* at 29–30.

The trial court denied the motion to limit the evidence to the criteria set forth in Section 204 (and thus implicitly rejected the argument that the *HUP* test was not applicable) but granted the motion to limit the evidence to that which would establish whether the Hospital would fall within the *St. Luke's* formula quoted above. Thereafter, the trial court amended its order to certify that the case involved a controlling question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal might materially advance the outcome and determination of the case. *See* 42 Pa.C.S. § 702(b).

The Hospital and Salisbury Township School District then filed a joint petition for permission to appeal an interlocutory order which we granted. We now proceed to review the questions presented.

Initially, we acknowledge that the trial court and parties did not have the benefit of our recent decision in *School District of the City of Erie v. Hamot Medical Center of the City of Erie,* 144 Pa.Commonwealth Ct. 668, 602 A.2d 407, (1992). In *Hamot* the hospital argued that the analysis of its tax status should be conducted under *West Allegheny,* not *HUP.* We recognized that the constitutional question of whether one seeking to obtain or retain tax exempt status is in fact a "purely public charity" within the meaning of Article VIII, Section 2(a)(v) of the Pennsylvania Constitution is a preliminary inquiry which must be addressed *before* the question of statutory qualification can even be reached. *Hamot,* 144 Pa.Commonwealth Ct. at 678, 602 A.2d at 412 (citing *G.D.L. Plaza Corp. v. Council Rock School District,* 515 Pa. 54, 59 n. 2, 526 A.2d 1173, 1175 n. 2, (1987)). We also recognized the Supreme Court's pronouncement in *G.D.L.* that *HUP* did not represent a departure from prior law including, of course, *West Allegheny.* With these general principles in mind we now turn to a consideration of *West Allegheny* and *HUP.*

In *West Allegheny* the Supreme Court held that a hospital was a purely public charity within the meaning of the constitutional provision where it had an open admissions policy which provided comprehensive health care without regard to the patient's ability to pay. The Court then considered the statutory criteria and concluded that despite the fact that public and private donations covered only a small part of the hospital's costs and the remaining costs were passed on to those patients who could pay, the criteria for an exemption had been met. It so concluded because the revenue from patient billings was being properly applied to the cost of financing the acquisition of facilities necessary to fulfill the hospital's charitable purpose, a permissible use of revenue under the statutory provision.

Subsequent to deciding *West Allegheny* the Supreme Court filed *HUP.* As in *West Allegheny,* its first inquiry was whether the institution was one of purely public charity. The institution, however, was not a hospital but an entity whose function was the preparation of statistical abstracts of medical records. The information compiled was distributed in the

form of reports to local hospitals so they could compare statistics for particular diagnoses. While the institution's actions were originally financed by an organization called the Hospital Council, later various hospitals undertook to fund the project themselves through the direct payment of set fees. For a charge, the reports were also made available to non-hospital entities. The issue in *HUP* was whether the institution was a purely public charity under Article VIII, Section 2(a)(v). In ruling that it was not the Supreme Court applied the five prong test enunciated above.

■ The Hospital here, as in *Hamot*, seeks to persuade us that *West Allegheny*, not *HUP* applies to it because it is a public hospital. We disagree. First, as previously recognized, the starting point is the Constitutional provision. While the *HUP* case did not involve a hospital as the entity seeking an exemption, what *HUP*, *Hamot* and this case all have in common is the same constitutional basis in Article VIII, Section 2(a)(v), recognizing the right of the legislature to provide for tax exemptions. The legislature, however, is constrained by that constitutional provision; an exemption may be granted under the authority of Article VIII, Section 2(a)(v), only to an institution of a "purely public charity." Nothing in that provision differentiates between different types of institutions, although an argument could be made that the statute may do so. But, any distinction which the statute may make cannot even be considered *until* the constitutional requirement that the institution be a purely public charity is met. The statute is subordinate to the constitution; not the other way around.

*West Allegheny* held that a hospital with an open admissions policy was a purely public charity under Article VIII, Section 2(a)(v). *HUP* held that a purely public charity under Article VIII, Section 2(a)(v), is to be determined under the five prong test. *G.D.L.* stated that *HUP* does not represent a departure from prior law. Ergo we conclude that *HUP* has merely amplified *West Allegheny* by setting forth the criteria to be applied in order to determine whether the institution seeking favored tax status is a purely public charity under the constitutional provision. Whether *West Allegheny* would be entitled

to its favored status under *HUP* is not the issue here as the caselaw had not evolved to that point when *West Allegheny* was decided. Now, however, we are bound by *HUP* as the definitive pronouncement on how a court must analyze whether an entity, any entity, seeking tax exempt status is a purely public charity within the intention of Article VIII, Section 2(a)(v) of the Pennsylvania Constitution. Accordingly, we conclude that the trial court correctly ruled that the evidence cannot be limited only to the statutory criteria in Section 204(a)(3).

■ With regard to the employment of the *St. Luke's* formula, however, we must disagree that the establishment of such a quantitive formula to be used in cases other than *St. Luke's* is proper and, hence, that the limitation of evidence in this case based on that formula is proper.[3] In discussing the requirement that an entity seeking an exemption must donate or render gratuitously a substantial portion of its services the *HUP* court wrote:

> Whether or not the portion donated or rendered gratuitous is 'substantial' is a determination to be made based on the totality of circumstances surrounding the organization. The word 'substantial' does not imply a magical percentage. It must appear from the facts that the organization makes a bona fide effort to service primarily those who cannot afford the usual fee.

*HUP*, 507 Pa. at 19 n. 9, 487 A.2d at 1315 n. 9. In light of this language we believe that any attempt to establish an across-

3. We take this opportunity to commend Judge Robert K. Young for his thorough analysis in the *St. Luke's* opinion of the difficulties inherent in this area of the law. He addresses his thirty-four page opinion (plus appendices) to "the citizens of the Lehigh Valley" and explains, in layperson's language, the conflicting public policies, the historical changes which have occurred over the years, the relevant constitutional, statutory and case law, and the need for legislative inquiry and response to deal with the complex issues involved in tax exemption matters. We do not suggest that the formula employed in *St. Luke's* was inappropriate there; to the contrary, it fits the facts well. But any across-the-board formula devised would need to address not only hospitals, but all institutions seeking charitable exemptions, and our Supreme Court has suggested that the inquiries relevant to a determination of charitable exemption are fact sensitive.

the-board quantification for the second prong of the *HUP* test is in error. Accordingly, we hold that the trial court erred when it decided that it would limit evidence to that relevant under the standard established in *St. Luke's.*

Based upon the foregoing discussion, the trial court's order is affirmed in part and reversed in part and this case is remanded for further proceedings consistent with this opinion.

PALLADINO and PELLEGRINI, JJ., did not participate in the decision in this case.

## ORDER

NOW, June 9, 1992, the order of the Court of Common Pleas of Lehigh County is affirmed insofar as it determined that the evidence to be presented at trial should be that set forth in *Hospital Utilization Project v. Commonwealth,* 507 Pa. 1, 487 A.2d 1306 (1985). It is reversed insofar as it determined that evidence would be limited to that pertaining to the quantified formula established in the case of *St. Luke's Hospital v. Board of Tax Assessment Appeals of Lehigh County,* No. 88–C–2691 (filed April 19, 1990). This case is remanded for further proceedings consistent with this opinion.

Jurisdiction relinquished.