**MARS AREA SCHOOL DISTRICT, Appellant,**

v.

**UNITED PRESBYTERIAN WOMEN'S ASSOCIATION OF NORTH AMERICA.**

**MARS AREA SCHOOL DISTRICT**

v.

**UNITED PRESBYTERIAN WOMEN'S ASSOCIATION OF NORTH AMERICA.**

**Appeal of COUNTY OF BUTLER, Appellant.**

Commonwealth Court of Pennsylvania.

Argued March 11, 1997.
Decided April 30, 1997.

Thomas W. King, III, Butler, for appellant.

Norman D. Jaffe, Butler, for appellee.

Before FLAHERTY and LEADBETTER, JJ., and SILVESTRI, Senior Judge.

LEADBETTER, Judge.

Appellants, Mars Area School District (the district) and the County of Butler, appeal from an order of the Court of Common Pleas of Butler County (trial court) which reversed the decision of the Board of Assessment Appeals of Butler County (the board) and exempted the United Presbyterian Women's Association of North America (UPWA), as a "purely public charity," from real estate taxes under Section 204(a)(3) of The General County Assessment Law, Act of May 22, 1933, P.L. 853, *as amended*, 72 P.S. §§ 5020–204(a)(3). The threshold issue is whether UPWA is a "purely public charity" and, therefore, entitled to a statutory exemption from the payment of real estate taxes for the property on which it operates the Mars Home for Youth (MHY), a residential treatment facility for adjudicated dependent and delinquent youth.

UPWA, a federal tax exempt charitable organization, was formed in 1878 to attend to the needs of orphans. In 1891, UPWA's charitable purpose extended to establish and maintain a hospital for the treatment of sick and disabled women and children and to establish a home for the aged.[1] In 1929, UPWA acquired farmland in Butler County of which approximately 70 acres[2] is used today to operate MHY.

MHY offers two types of programs. The intensive supervision program consists of a twenty-four hour per day supervised living arrangement and is designed to help children with chronic problems. The other main program is the residential treatment program which includes: (1) managed independent training on living skills and educational or vocational opportunities for adolescents and (2) programs fashioned to aid younger adolescents in their emotional and social development and to enable them to return to a family environment. Other types of treatment include psychiatric and psychological services, including both individual and family therapy. In addition, MHY offers group therapy dealing with sexual abuse, drug and alcohol abuse, eating disorders, self-esteem, and expressive arts. MHY also provides special educational services, such as individual tutoring and enrollment in Mars Area School District.

On April 20, 1995, after holding a hearing on the district's challenge to UPWA's real estate tax exemption, the board upheld the district's appeal and determined that the property and improvements on the 72.868 acres, which UPWA uses to operate MHY, were taxable by the district beginning with the 1995–1996 tax period and taxable by Adams Township and Butler County commencing in 1995. UPWA appealed, and the trial court, after holding a de novo hearing on

---

1. The 1975 amended articles of incorporation state that its purposes are:

    (a) To own and operate a home for aged persons ministering to the physical, spiritual and financial needs of the elderly by providing housing and health care as well as religious, civic, cultural and recreational opportunities for the residents at a cost which generally shall exceed fees or other charges imposed.

    (b) To own and operate a home for children ministering to the physical, spiritual and financial needs of children by providing housing and health care as well as religious, civic, cultural and recreational opportunities for the residents at a cost which generally shall exceed fees or other charges imposed.

    (c) To place residents of the home for children in foster homes or homes for adoption.

    Restated Articles of Incorporation, February 3, 1975. The amended articles also state that UPWA "does not contemplate pecuniary gain or profit, incidental or otherwise." *Mars Area Sch. Dist. v. United Presbyterian Women's Ass'n of N. America* (No. 95–4164, filed June 11, 1996), slip op. at 6.

2. These 72.868 acres, which comprise the parcel subject to this dispute, has a tax map identification number of 3f66, parcel 5B.

August 25, 1995, reversed the board's decision.[3] The trial court determined that UPWA met its burden of demonstrating that it is a "purely public charity" under the standards set forth in *Hospital Utilization Project v. Commonwealth*, 507 Pa. 1, 487 A.2d 1306 (1985) (*HUP*). The court further held that UPWA qualified for a real estate tax exemption under Section 204(a)(3) of The General County Assessment Law. This appeal followed.

■ Whether an institution is a "purely public charity" is a mixed question of law and fact on which the trial court's decision is binding absent an abuse of discretion or lack of supporting evidence. *City of Washington v. Board of Assessment Appeals of Washington County*, 666 A.2d 352, 358 (Pa.Cmwlth. 1995), *alloc. granted* 545 Pa. 672, 681 A.2d 1344 (1996). In *G.D.L. Plaza v. Council Rock School District*, 515 Pa. 54, 526 A.2d 1173 (1987), the Supreme Court noted that in deciding whether an institution is one of purely public charity " 'prior cases have limited value as precedent,' ... because of the continually changing nature of the concept of charity and the many variable circumstances of time, place, and purpose." 515 Pa. at 59–60, 526 A.2d at 1175 (citation omitted).

Article 8, Section 2 of the Pennsylvania Constitution gives the General Assembly the power to exempt institutions of "purely public charity" from taxation, but in the case of real property, only that portion of real property which is actually and regularly used for the purposes of the institution shall be exempt. Pa. Const. art. VIII, § 2(a)(v). Pursuant to this authority, the General Assembly enacted Section 204 of The General County Assessment Law,[4] and Section 202 of The Fourth to Eighth Class County Assessment Law,[5] which grant real estate tax exemptions to institutions of "purely public charity."

■ Initially, we note that because the land in question is located in Butler County, a fourth class county, The Fourth to Eighth Class County Assessment Law, and not The General County Assessment Law, applies. Therefore, the trial court erred in finding that UPWA qualified for tax exemption under the latter law. Appellants argue that this is reversible error; we disagree. The statutes are substantially similar. *See West Allegheny Hosp. v. Board of Property Assessment*, 500 Pa. 236, 242, 455 A.2d 1170, 1173 (1982)(stating that the provisions of the two statutes are comparable); *Mount Zion New Life Ctr. v. Board of Assessment and Revision of Taxes and Appeals*, 94 Pa. Cmwlth. 439, 503 A.2d 1065, 1067 n. 3 (1986)(applying arguments under one statute to tax status under the other statute). Moreover, the evidence and the trial court's findings establish that UPWA qualified under both statutes. Thus the fact that the trial court based its analysis on Section 204 rather than Section 202 was harmless error.

In determining whether UPWA is entitled to an exemption, we must first determine whether UPWA qualifies as a "purely public charity" within the meaning of the Pennsylvania Constitution. *City of Washington*, 666 A.2d at 357. On appeal, appellants contend that UPWA failed to satisfy its burden under *HUP*, where our Supreme Court concluded that an entity qualifies as a "purely public charity" if it:

(a) Advances a charitable purpose;

**3.** The board ordered that taxes be paid to the township and county in addition to the district. In reversing the board's order "upholding the appeal of Mars Area School District challenging the tax exempt status for UPWA," the trial judge stated that UPWA qualified for a real estate tax exemption under the Pennsylvania Constitution and statutory law. The judge specifically ordered UPWA's exemption from the district's real estate taxes; however, he did not issue a specific order regarding the county and township taxes.

The district alone challenged UPWA's tax exempt status before the board. Thus, it is not clear that the board had authority to order taxes to be paid to the township and the county since neither of these entities was a party before the board. In light of our disposition of the merits, we need not address this procedural issue. We note that we construe the trial court's order granting UPWA tax exemption, while ambiguously written, to reverse the board's order with respect to both the township and the county as well as the district.

**4.** 72 P.S. § 5020–204.

**5.** Act of May 21, 1943, P.L. 571, *as amended*, 72 P.S. § 5453.202.

(b) Donates or renders gratuitously a substantial portion of its services;

(c) Benefits a substantial and indefinite class of persons who are legitimate subjects of charity;

(d) Relieves the government of some of its burden; and

(e) Operates entirely free from private profit motive.

*Id.* at 22, 487 A.2d at 1317.[6]

Once an institution establishes that it is a "purely public charity" under the *HUP* test, it must then establish that it meets the statutory criteria of Section 202(a)(3) which provides that:

(a) The following property shall be exempt from all county, borough, town, township, road, poor, county institution district and school (except in cities) tax, to wit:

. . . .

(3) All hospitals, universities, colleges, seminaries, academies, associations and institutions of learning, benevolence or charity, . . . founded, endowed and maintained by public or private charity: Provided, That the entire revenue derived by the same be applied to the support and to increase the efficiency and facilities thereof, the repair and the necessary increase of grounds and buildings thereof, and for no other purpose: Provided further, That the property of associations and institutions of benevolence or charity be necessary to and actually used for the principal purposes of the institution and shall not be used in such a manner as to compete with commercial enterprise.

72 P.S. § 5453.202(a)(3).

## A. Advances a Charitable Purpose

■ Appellants first contend that the trial court erred in finding that UPWA promotes a charitable purpose. An entity advances a charitable purpose if it provides services or property for general public use which are designed to benefit an indefinite number of persons from an educational, religious, moral,

physical or social standpoint. 61 Pa.Code § 32.1(A). By serving the needs of adjudicated delinquent and dependent children and providing a home for the elderly, UPWA benefits the public as a whole and clearly advances a charitable purpose.

## B. Donates or Renders Gratuitously a Substantial Portion of its Services

■ Next, appellants assert that the trial court erred in concluding that UPWA donates or renders gratuitously a substantial portion of its services. Appellants allege that UPWA does not satisfy this requirement because MHY does not accept any child unless it receives a per diem payment from the referring county and because MHY does not provide wholly gratuitous services for any child. Further, appellants assert that MHY's contribution of 3.7% in 1994 toward the total program expenses was not substantial.

Whether or not the portion donated or rendered gratuitous is "substantial" is a determination to be made based on the totality of circumstances surrounding the organization. The word "substantial" does not imply a magical percentage. It must appear from the facts that the organization makes a bona fide effort to service primarily those who cannot afford the usual fee.

*HUP*, 507 Pa. at 19 n. 9, 487 A.2d at 1315 n. 9. In determining if an entity meets this criteria, the factors considered include, *inter alia*, the remuneration paid to its director and staff, the entity's budget, the percentage of income used to provide the charitable service, the type of charitable services provided, the location of the organization, the length of time the organization has been in operation, and the cost of providing its charitable services. 61 Pa.Code § 32.1(B)(II).

In *In re St. Margaret Seneca Place v. Board of Property Assessment, Appeals and Review, County of Allegheny*, 536 Pa. 478, 640 A.2d 380 (1994), the Supreme Court opined that this requirement:

does not imply a requirement that the institution forgo available government pay-

---

**6.** These standards reflect the minimum constitutional qualifications for being an appropriate subject of tax exemption; they do not themselves establish eligibility for exemption. *City of Washington*, 666 A.2d at 357; *G.D.L. Plaza*, 515 Pa. at 59 n. 2, 526 A.2d at 1175 n. 2.

ments which cover *part* of its costs, or that it provide wholly gratuitous services to some of its residents.

*Id.* at 486, 640 A.2d at 384. The fact that MHY accepts a per diem payment for its children does not mandate the conclusion that MHY does not donate a substantial portion of its services. Moreover, appellant's assertion that UPWA only provided for 3.7% of the total expenses in 1994 is not dispositive on this issue. Rather, the record indicates that UPWA's 1994 contribution is considerably lower than it was in prior years.[7] The trial court found that MHY operated under deficit conditions from 1985 through 1994. Moreover, UPWA donates the premises rent free for MHY's operation. While the record does not reflect the dollar value of this in kind contribution, it clearly provides a substantial additional contribution to MHY's operation. Finally, UPWA permits the district and community associations to use MHY's premises for soccer practice, gym classes and nature walks. Under the totality of the circumstances, the trial court properly concluded that UPWA donates or renders a substantial portion of its services gratuitously.

## C. Benefits a Substantial and Indefinite Class of Persons who are Legitimate Subjects of Charity

■ Appellants next claim that the trial court erred in determining that UPWA met the third *HUP* requirement, *i.e.*, that if the beneficiary of the gift conferred by the organization is limited to a particular group of the public, that group must be a "legitimate subject of charity." Legitimate subjects of charity are those who are unable to provide for themselves what the organization provides and include the handicapped, the aged, the sick, children and the poor. 61 Pa.Code § 32.1(C). Appellants do not dispute that the adjudicated dependent and delinquent children who reside at and receive services and treatment from MHY are legitimate sub-

jects of charity. Rather, appellants claim that because MHY requires a contract for per diem reimbursement at a negotiated rate with the child's county of residence, the benefited class is not indefinite.

In order to qualify as a substantial and indefinite class of persons, the beneficiary of the charity must be the public; however, the scope of the recipients can be limited to a particular group of the public, as long as the group is a legitimate subject of charity. 61 Pa.Code § 32.1(C). In *City of Washington,* this court recognized that "some reasonable restrictions are necessary in all large bodies." 666 A.2d at 362.

MHY does not discriminate on the basis of race, sex, national origin, or religion. Further, restricting admission to adjudicated delinquent and dependent children is reasonable and necessary for a treatment facility of this kind. Moreover, because the per diem payment only partially covers the costs of MHY services, the children are still legitimate objects of charity who cannot afford to pay.[8] The fact that MHY does not accept children who are not recommended through a county does not destroy UPWA's public character. Therefore, we conclude that UPWA benefits a substantial and indefinite class of persons who are legitimate subjects of charity.

## D. Relieves the Government of Some of its Burden

■ The fourth requirement under the *HUP* test requires the organization to bear a substantial burden which would otherwise fall on the government. *City of Washington,* 666 A.2d at 363. Appellants do not dispute that the Commonwealth is required to care for its dependent and delinquent children. However, appellants contend that by accepting per diem reimbursements by the counties, UPWA is performing the government's responsibilities as an independent contractor rather than relieving the government of a burden.

7. On average, over the last ten years, the trial court found that UPWA's contribution has been 23.6%. *Mars Area Sch. Dist.*, slip op. at 28.

8. In *In re St. Margaret Seneca Place,* the Supreme Court held that people whose costs are only

partially covered by Medicaid payment were manifestly legitimate objects of charity and people who could not afford to pay. 536 Pa. at 487, 640 A.2d at 384.

The *HUP* test of whether an institution has relieved the government of some of its burden does not require a finding that the institution has fully funded the care of some people who would otherwise be fully funded by the government.

*In re St. Margaret Seneca Place,* 536 Pa. at 487, 640 A.2d at 385. As discussed above, MHY has paid for a substantial portion of the costs for the care of its children. Thus, UPWA relieves the government of some of its burden.

### E. Operates Entirely Free from Private Profit Motive

■ Appellants also contend that the trial court erred in finding that UPWA met the final *HUP* requirement. Appellants argue that because MHY only accepts residents from whom they receive a fee, UPWA is motivated by profit. This claim is without merit because a fee arrangement alone does not indicate that an entity has a profit motive. Even the generation of surplus funds will not be deemed evidence of a profit motive if the funds are reinvested to aid legitimate subjects of charity. 61 Pa.Code § 32.1(E); *In re St. Margaret Seneca Place,* 536 Pa. at 488, 640 A.2d at 385 (surplus revenue is not synonymous with private profit as long as it is used as required by statute).

In the instant case, UPWA has never operated at a surplus, nor have they indicated an intention to generate a surplus. Rather, the trial court found that the UPWA operated at a deficit from 1985 though 1994. Moreover, UPWA uses whatever money it receives to cover operating expenses and to increase efficiency, facilities, grounds and buildings. In addition, the evidence supports the trial court's findings that the employees of MHY earn reasonable salaries. Therefore, we con-

clude that UPWA operates entirely free from a profit motive.[9]

### F. An Institution Founded, Endowed and Maintained by Charity

Having determined that UPWA is a "purely public charity" under the *HUP* test, we now address whether UPWA is entitled to a tax exemption pursuant to Section 202(a)(3). In order to be entitled to a real estate exemption under Section 202, an entity must affirmatively show that: (1) the entire institution is a "purely public charity"; (2) it was founded by a public or private charity; and (3) it is maintained by a public or private charity. 72 P.S. § 5453.202(a)(3). In addition, the institution must establish that its property is necessary to and actually used for its charitable purpose and not used in such a manner as to compete with commercial enterprise. *Id.*

The trial court found that UPWA met the first three requirements above, and appellants do not dispute this finding. Instead, appellants contend that the trial court's misapplication of Section 204(a)(3) of The General County Assessment Law mandates the conclusion that UPWA failed to meet the statutory criteria for exemption under Section 202(a)(3) of The Fourth to Eighth Class County Assessment Law for exemption because the standards under Section 204(a)(3) differ from those under Section 202(a)(3). Specifically, appellants assert that UPWA failed to demonstrate that UPWA's property (1) is necessary to and actually used for its principal purposes and (2) is not used in such a manner to compete with private enterprise.[10]

■ In proving that the property is necessary to the use of the charity, absolute necessity is not required. *Scranton Pocono v. County Comm'rs of Susquehanna,* 71 Pa.

9. We further note that the board, which denied the exemption, found that UPWA operates entirely free from a profit motive.

10. Instead of these criteria, Section 204(a)(3) states that:

> And provided further, That any charitable organization providing residential housing services in which the charitable nonprofit organization receives subsidies for at least ninety-five per centum of the residential housing units from a low-income Federal housing program shall remain a "purely public charity" and tax exempt provided that any surplus from such assistance or subsidy is monitored by the appropriate governmental agency and used solely to advance common charitable purposes within the charitable organization.

72 P.S. § 5020–204(a)(3).

Cmwlth. 528, 455 A.2d 281, 283 (1983). Rather, the entity must show (1) a "reasonable necessity," embracing the idea of convenience, and (2) usefulness for the intended purpose. *Id.* Moreover, a charity's eligibility for an exemption from real estate property tax depends upon whether or not the land is actually used for the charity's purpose. *Id.*

 In the instant case, the trial court found and the record reveals that the 72.868 acres of land used to operate MHY includes an administration building, five individual houses, a dining hall, a recreation center, residential units of housing, a maintenance garage, out buildings, storage sheds, an outdoor pool, softball fields, soccer fields, and outdoor sports courts. These facilities are reasonably necessary to carry out MHY's charitable purpose. In addition, the facilities are actually used by MHY, which provides housing and treatment for approximately 54 children at one time. Finally, MHY does not engage in any activity which competes with private enterprise. To the contrary, as stated above, MHY relieves the government of some of its burden.[11]

Accordingly, the order of the trial court is affirmed.

### ORDER

**AND NOW,** this 30th day of April, 1997, the order of the Court of Common Pleas of Butler County in the above-captioned matter is hereby affirmed.

---

11. Appellants also contend that the trial court's statement that the district filed its challenge in retaliation against UPWA denied Appellants the opportunity to have a fair and impartial determination before that court on the merits. Appellants' retaliation argument is without merit. A review of the record reveals nothing to indicate that Appellants were prejudiced in any way by the trial court's statement.